No. 69,112

THOMAS S. SPIVEY, *Appellant*, v. SAFECO INSURANCE COMPANY and AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, *Appellees*.

(865 P.2d 182)

Opinion filed December 10, 1993.

*David L. Young*, of Wassberg & Gallagher, of Kansas City, Missouri, argued the cause, and *Gary C. Haggerty*, of the same firm, was on the briefs for appellant.

*F. Russell Peterson*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause, and *James L. Sanders* and

*D'Ambra M. Howard*, of the same firm, were on the brief for appellee Safeco Insurance Company.

*Laurence R. Tucker*, of Watson, Ess, Marshall & Enggas, of Kansas City, Missouri, argued the cause, and *Jayne A. Pearman*, of the same firm, was with him on the brief for appellee American Manufacturers Mutual Insurance Company.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiff insured appeals the district court's grant of summary judgment to defendant insurers. The insured filed this action alleging that the insurers breached their contract to defend him in a civil tort action filed in the federal district court by a female employee, who alleged the insured made sexual demands and committed intentional torts of assault, battery, and infliction of emotional distress and that he intentionally inflicted bodily harm upon her. The insured claims that the district court applied the wrong law and incorrectly found that (1) the policies were not ambiguous and (2) there was no coverage under the policies for the alleged acts and therefore no duty for the insurers to defend him.

In July 1978, M.P. was hired by General Motors Corporation (GM) and was eventually assigned to a department of which Thomas S. Spivey was superintendent. Eight years later M.P. filed separate lawsuits against Spivey and GM in the Circuit Court of Jackson County, Missouri, alleging that from 1978 to January 1986 Spivey made demands on her for sex and intentionally and recklessly committed various torts against her, including assault, battery, infliction of emotional distress, and infliction of bodily harm. She dismissed both suits and refiled them in the United States District Court for the Western District of Missouri.

Spivey admitted having a consensual sexual relationship with M.P. but denied all her allegations of intentional tort. Spivey requested that his insurance carriers defend him, but they refused. Two of the carriers that refused to defend Spivey are the remaining defendants in this case, Safeco Insurance Company (Safeco) and American Manufacturer's Mutual Insurance Company (AMMIC). M.P.'s lawsuit against GM was tried first. The United States District Court found for GM and against M.P. In its findings of fact, the federal judge concluded that M.P.'s relationship with Spivey was welcomed by M.P. and that Spivey did not

commit the intentional torts alleged by M.P. On the basis of the findings and judgment in the GM case, Spivey was granted summary judgment in M.P.'s lawsuit against him. After successfully defending against M.P.'s action in federal court without the assistance of the insurance companies, Spivey then filed this action in the District Court of Johnson County against his insurers, alleging breach of contract for failure to defend him in the federal action.

All parties filed motions for summary judgment. For the purpose of the summary judgment motions, the district court applied Missouri law to the last Safeco policy issued to Spivey. The district court granted summary judgment for Safeco and AMMIC. Spivey appeals the order granting summary judgment to defendants. Spivey asserts numerous issues and sub-issues in his appeal. We have considered each claim. In the interest of clarity, we will discuss only the determinative issues in this opinion. We first, however, note our standard of review.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When a summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *Patterson v. Brouhard,* 246 Kan. 700, 702, 792 P.2d 983 (1990).

" 'The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Barbara Oil Co.v. Kansas Gas Supply Corp.,* 250 Kan. 438, 445, 827 P.2d 24 (1992).

## SUMMARY JUDGMENT—THE SAFECO POLICIES

There are three successive homeowners/condominium-unit owners insurance policies under which Spivey was insured by Safeco, having combined effective dates of June 1974 to August 8, 1981. Spivey claims some of the alleged acts occurred in Missouri while the last policy was in effect; therefore Missouri law

applies to that policy. Safeco claims all the alleged acts occurred in Kansas, and Kansas law governs all three of its policies. The Safeco policies defined "occurrence" as:

"An accident, including injurious exposure to conditions, which results during the policy term, in bodily injury or property damage."

The exclusions provision of the Safeco policies is stated under Exclusion (1)(f):

"This policy does not apply . . . to bodily injury or property damage which is either expected or intended from the standpoint of the insured."

This provision appears immediately after the insuring agreements and before the definitions sections.

## INSURANCE POLICY AMBIGUOUS

Spivey claims that Safeco's policy is ambiguous; therefore, the insurer had a duty to defend him in the federal lawsuit. The district court reviewed the written policy and found it was not ambiguous.

As a general rule, the interpretation or construction and meaning and legal effect of written instruments are matters of law exclusively for the court and not questions of fact for determination by the jury. *Federal Land Bank of Wichita v. Krug*, 253 Kan. 307, 311, 856 P.2d 111 (1993). Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect. *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.*, 243 Kan. 130, Syl. ¶ 1, 754 P.2d 803 (1988).

Insurance policies are to be enforced as written so long as the terms do not conflict with pertinent statutes or public policy. Where terms are ambiguous, the policy shall be construed to mean what a reasonable person in the position of the insured would have understood them to mean. A policy is not ambiguous, however, unless there is genuine uncertainty as to which of two or more possible meanings is proper. *House v. American Fam. Mut. Ins. Co.*, 251 Kan. 419, Syl. ¶ 3, 837 P.2d 391 (1992).

After reviewing the insurance contract, we find it is not ambiguous.

## NO DUTY TO DEFEND

Spivey contends the district court incorrectly determined that

there was no "occurrence" under the Safeco policies and therefore no duty to defend. Spivey asserts that the district court erred when it relied on M.P.'s petition in the federal case to determine whether the insurance carriers had a duty to defend rather than following the rule of *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403 (1973), which requires the insurer also to consider any facts brought to its attention or which it could have reasonably discovered.

In *Spruill*, during a dispute over a bill for auto repairs, a customer, Rounkles, claimed one of Spruill's employees ran over the customer's foot. The customer sued and Spruill's insurer, after investigating the matter, refused to defend Spruill in the litigation. After the customer prevailed against Spruill, Spruill sued its insurer, seeking, *inter alia*, reimbursement for the judgment and attorney fees in the Rounkles case. The insurer denied it had any duty to represent Spruill because the customer's petition alleged injuries due to Spruill's employee's intentional torts. The insurer contended such intentional acts were outside the coverage of Spruill's liability insurance contract for two reasons: (1) It is against public policy to insure anyone against the results of his or her intentional torts, and (2) the acts were specifically excluded from the definition of "occurrences" against which Spruill was insured. The policy provided the insurer would defend and pay any damages for any occurrence, but excluded intentional acts from the definition of occurrence.

The district court granted the insurer's motion for summary judgment, and Spruill appealed. Before *Spruill*, this court had held the duty of an insurer to defend an action for damages against its insured was not measured by proof which may be adduced at the trial or by the outcome of the litigation, but was to be determined by the allegations of the petition in the action and by the terms and provisions of the policy. See *Brown v. Green*, 204 Kan. 802, Syl. ¶ 3, 466 P.2d 299 (1970). *Brown* held an insurer is not obligated to defend the action where it would have no liability in the event a judgment is rendered against its insured. The *Spruill* court noted that the *Brown* court had failed to consider either the enactment of the new code of civil procedure for Kansas in 1963 or the decision in *Milliken v. Fidelity and Casualty Company of New York*, 338 F.2d 35 (10th Cir.

1964). The *Spruill* court then overruled the holding in *Brown* and *Leonard v. Maryland Casualty Co.*, 158 Kan. 263, 146 P.2d 378 (1944), that an insurer may rely on the plaintiff's petition alone to determine whether there is a duty to defend. 212 Kan. at 686.

The *Spruill* court then observed that Spruill's employees' act of taking possession of the truck, although intentional, was not the act which caused the customer's injury. If liability for injury attached, it was caused by the manner in which the employees were moving the truck. Spruill's policy provided that the injury must be caused by an "occurrence" which was defined as "an accident . . . which results . . . in bodily injury or property damage neither expected nor intended from the standpoint of the insured." 212 Kan. at 684. The insurer's investigation report disclosed the insured neither expected nor intended bodily injury to result. Under that policy, coverage was avoided only if an act resulted in an intentional injury. We observed that an intentional act, however, may result in an unintended injury. The *Spruill* court reversed the district court and granted summary judgment to Spruill. It also noted that insurance contracts, by the use of independent and unrelated language, attempt to define the duty to defend. It refused to speculate why policies uniformly do not define the duty to defend as being parallel to the coverage of the policy, but it observed the result may be to extend the duty to defend beyond the extent of the coverage. 212 Kan. at 687-88.

Spivey asserts if the insurer must look beyond the pleadings, that should have been part of the test used by the district court in determining a motion for summary judgment. Spivey argues that the district court failed to apply the rule. We disagree.

The district court noted that all three policies required Safeco to pay all sums which its insured became legally obligated to pay for bodily injury or property damage caused by an accident which results during the policy term. The district court pointed out that M.P.'s petition alleged intentional acts on Spivey's part, that Safeco's arguments for summary judgment were directed upon the claims M.P. made in her petition, and that Safeco acknowledged that generally the insurer's duty to defend is not determined by the pleadings alone. The district court observed that

Spivey contended that the "occurrence" language of the policies did not preclude coverage because although he intended to have sex with M.P., he did not intend to injure her. The district court pointed out that Spivey was not sued for having sex with M.P. (an intentional act) but for intentionally injuring her (an intentional injury) by threats with a knife and gun, by shooting a gun at her, and by forcing sexual acts upon her. The district court noted that the term "accident," as used in the policies, meant an "unintentional act." Because the alleged acts were intentional, not accidental, the district court concluded that (1) as a matter of law the injuries to M.P., if any, were intentional injuries; and (2) the actions alleged were not occurrences as defined in the Safeco policies; therefore, there was no duty for Safeco to defend the lawsuit against Spivey.

Although the district court did not mention *Bell v. Tilton*, 234 Kan. 461, Syl. ¶ 2, 674 P.2d 468 (1983), in its memorandum opinion, in *Bell* we discussed coverage of an intentional act and an unintentional injury. The insurer's homeowners policy provided coverage for bodily injuries or property damage caused by a covered occurrence. The defendant, Russell Wayne Tilton (Rusty), the 11-year-old son of the homeowners, was an insured. Coverage under the policy was limited by an exclusion which provided: "This policy does not apply . . . to bodily injury or property damage which is either *expected or intended from the standpoint of the insured.*" Two 11-year-old boys, Chris and Dion, spent the night with Rusty at his rural home. Rusty knew the dangers inherent in gun handling, was taught the art of safe gun handling by his father, and had successfully completed the basic hunter safety course. The boys played in the hayloft and there was shooting of the BB gun. Rusty left the hayloft. A "game" developed whereby Chris and Dion would run across the open hay door inside the loft and Rusty, standing outside the barn, fired the BB gun into the open door at the running boys. Rusty saw Chris peek around the side of the hay door opening, took aim, and fired the BB gun at him. The BB pellet hit Chris in the right eye, causing severe injury.

The initial suit filed against the Tiltons alleged both negligence and intentional tort theories. Subsequently, plaintiff dropped his intentional tort contention and relied solely on negligence. The

jury awarded Bell $30,800. Plaintiff filed a garnishment proceeding against the insurance company, claiming under the Tiltons' homeowners policy. In its answer, the insurer asserted it was not indebted to Rusty Tilton under its policy because the insured had intentionally injured the plaintiff. The trial court concluded the circumstances of plaintiff's injury came within the "expected or intended" exclusion of the Tilton policy and, accordingly, garnishee insurance company had no liability. On appeal, plaintiff argued that because Tilton testified he did not have the specific intent to injure plaintiff's eye when Tilton fired the BB gun at plaintiff, then the injury is not as a matter of law "intentional" within the meaning of the policy exclusion.

This court, in *Bell*, noted that numerous cases in other jurisdictions, and two in particular, had addressed the matter of intent with regard to insurance policies which exclude coverage for intentional torts. In *Clark v. Allstate Insurance Company*, 22 Ariz. App. 601, 529 P.2d 1195 (1975), Clark, who was covered by his parents' insurance policy which excluded injury caused feloniously or intentionally by or at the direction of an insured, struck a fellow student in the face. Clark, like Rusty Tilton, stated that although he did intend to hit the student in the face with a short jab, he did not intend to hurt the student he struck. After the other student sued, the Clarks' insurer brought a declaratory judgment action to determine it was not liable as an insurer because the injury inflicted by its insured was the result of an intentional tort. The trial court granted the insurer judgment, and the Arizona Court of Appeals affirmed. The appellate court noted that the contention of young Clark that he did not intend to injure the student he hit did not make the question of intent an issue of material fact which must go to the trier of fact because the act of striking another in the face was so certain to cause harm that a person who did the act intended the resulting harm, and his statement to the contrary did not refute that rule of law.

*State Farm Fire & Cas. Co. v. Muth*, 190 Neb. 248, 207 N.W.2d 364, *modified* 190 Neb. 272 (1973), also involved a minor firing a BB rifle and an interpretation of an insurance policy exclusion for "bodily injury or property damage which is either expected or intended from the standpoint of the insured." 190 Neb. at 249. Affirming the trial court judgment against the in-

surance company, the Nebraska Supreme Court held that under the language of the exclusion, an injury is either expected or intended if the insured acted with the specific intent to cause harm to a third party. It was immaterial whether the injury which results was specifically intended, *i.e.*, the exclusion would apply even though the injury is different from that intended or anticipated.

This court, in *Bell*, then observed that under the "expected or intended from the standpoint of the insured" policy exclusion language, it was not necessary for the insurance company to show Tilton specifically intended to strike Bell in the eye with a BB pellet in order to deny liability. Rather, if from the acts, circumstances, and inferences of the case, it appeared Tilton had the desire to cause the consequences of his acts or he believed the consequences were substantially certain to result, his conduct was intentional and the policy exclusion was operative. We found there was substantial competent evidence before the trial court to support its finding that the shooting was intentional. Consequently, we found the trial court did not err in entering judgment for the garnishee and in dismissing the garnishment action. 234 Kan. at 472.

In essence, plaintiff in *Bell* argued that because the insured testified in his deposition he did not have the specific intent to injure plaintiff's eye when he fired the BB gun at plaintiff's face, the injury is not as a matter of law "intentional" within the meaning of the policy exclusion. We disagreed. We concluded that where an intentional act results in injuries which are a natural and probable result of the act, the injuries are intentional.

Under the present code of civil procedure, an insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend. If those facts give rise to a "potential of liability," even if remote, under the policy, the insurer bears a duty to defend. *MGM, Inc. v. Liberty Mut. Ins. Co.*, 253 Kan. 198, 202, 855 P.2d 77 (1993). The duty to defend rests primarily on the possibility that coverage exists, and the possibility of coverage must be determined by a good faith analysis of all information the insurer may know or could have reasonably ascertained. If ambiguities in coverage,

including exclusionary clauses, are judicially determined against the insurer, the ultimate result controls the insurer's duty to defend. *Spruill*, 212 Kan. at 686.

The duty to defend and whether the policy provides coverage are not necessarily coextensive. The duty to defend arises whenever there is a "potential of liability" under the policy. The insurer determines if there is a potential of liability under the policy by examining the allegations in the complaint or petition and considering any facts brought to its attention or which it could reasonably discover. Where a petition alleges an act that is clearly not covered, for example, that the defendant acted willfully and intentionally, there would be no potential of liability under the policy for intentional acts. Where the complaint alleges both a negligent and intentional act, these alleged facts give rise to the potential for liability, and the duty to defend arises. *MGM, Inc.*, 253 Kan. at 202.

M.P.'s petition did not allege both a negligent and intentional act. M.P.'s complaint in the federal action alleged Spivey's acts were intentional and he intended to injure her. Where an intentional act results in injuries which are a natural and probable result of the act, the injuries are intentional. A liability provision in an insurance contract excluding coverage for injuries expected or intended from the standpoint of the insured excludes from coverage an injury which the insured intentionally caused. *Casualty Reciprocal Exchange v. Thomas*, 7 Kan. App. 2d 718, 721, 647 P.2d 1361, *rev. denied* 231 Kan. 799 (1982).

Spivey, in his brief and at oral argument, cites *Gowing v. Great Plains Mutual Ins. Co.*, 207 Kan. 78, 483 P.2d 1072 (1971). In that case, plaintiff's petition charged Gowing with unprovoked, willful, malicious, vicious, and violent assault and battery. The insurance policy contained provisions that attempted to limit or restrict from coverage bodily injury or property damage caused intentionally by or at the direction of the insured. The *Gowing* court noted that other provisions of the policy provided coverage "even if any of the allegations of the suit are groundless, false or fraudulent." 207 Kan. at 79. The court concluded the contract's language was ambiguous and failed to clearly reveal the exclusion. 207 Kan. at 83. That case does not apply due to our finding that the policies between Spivey and the insurers are not ambiguous.

The trial court, viewing the facts most favorably to Spivey, assumed that part of the conduct alleged by M.P. occurred in Missouri and that Missouri law controlled as to that Safeco policy. The court found that Missouri law is similar to Kansas law as to intentional acts and the intentional injury issue. The court observed that in Missouri "accident" means that which happened "by chance or fortuitously, without intention or design and which is unexpected, unusual and unforeseen." The court found that, under Missouri law, the injury would be intended because the intentional acts were of a character from which as a matter of law, a court may infer an intent to injure. The court determined that summary judgment was proper under Missouri law because both the act and the injury were intended by Spivey and there was no "occurrence" because the policy defined "occurrence" as an accident. The district court held that under Missouri law the Safeco "intentional acts" exclusion clause of the Missouri policy excluded coverage. The district court found that under either Kansas or Missouri law Safeco was entitled to summary judgment. For purposes of reviewing the ruling on the motion for summary judgment, this court will also assume Missouri law governs the one policy and determine if there is coverage based on Missouri law.

Spivey claims that the district court erred in determining which Missouri law applied and cites *American Family Mut. Ins. v. Pacchetti*, 808 S.W. 2d 369 (Mo. 1991), as authority. In *Pacchetti*, a 16-year-old boy, Derek, was visiting in the home of Pacchetti who either injected the boy with cocaine or assisted him in injecting cocaine. The boy died from an overdose of cocaine. The boy's parents sued Pacchetti, who was covered by a homeowners policy which insured Pacchetti against liability for personal injury and property damage for which he was legally responsible but excluded bodily injury "which is expected or intended by any insured." Pacchetti's insurer brought a declaratory judgment action contending that the misfortune was within the exclusion, so that it was not covered by insurance. The trial court entered judgment for the defendants, concluding that the claim was within the coverage of the policy. The trial court found there was insufficient evidence that Pacchetti intended or expected to cause the death and insufficient evidence to *infer* that he intended or

expected to cause injury. The insurance company appealed, and the Missouri Court of Appeals reversed, concluding that "as a matter of law, the injury to Derek was expected."

Transfer to the Missouri Supreme Court was granted because of the widespread use of an exclusion for injuries intended or expected in liability insurance policies. That court affirmed the trial court, finding that the injury was within the liability coverage of the policy and that the insurer did not automatically bring the exclusion into play simply by showing that cocaine is harmful or that the insured's acts in providing it to Derek were intentional. The Missouri court observed that many intentional acts are within the coverage of liability insurance policies, even with this standard exclusion. It pointed out that it must be shown not only that the insured intended the acts causing the injury, but that injury was intended or expected from these acts, citing See *Steelman v. Holford*, 765 S.W.2d 372, 377 (Mo. App. 1989). The Missouri Supreme Court determined that it remained for the insurer to show that this particular insured expected or intended the result which occurred. *Steelman* was found to be analogous to *Pacchetti*, but there was no showing that the insured in *Steelman* acted with the purpose of injuring the plaintiff or anybody else. The Missouri Court of Appeals in *Steelman* concluded that there was a fact question as to whether the injury was expected or intended, and affirmed the trial court's finding of coverage.

The district court in Spivey's case asserted that *Pacchetti* does not stand for the proposition that under Missouri law reckless acts are not excluded by an intentional acts exclusion clause. It noted that in *Pacchetti*, the Missouri court stated that the insurer must show that the insured expected or intended the result which occurred, and it determined that because it was not shown that Pacchetti intended to injure the boy even if he injected him with cocaine, *Pacchetti* was not dispositive.

To determine whether acts which result in injuries which are a natural and probable result of the act are intentional and can be excluded under Missouri law, the district court instead relied on *Hanover Ins. Co. v. Newcomer*, 585 S.W.2d 285 (Mo. App. 1979). Newcomer, a named insured under a homeowners policy, and Samantha Locke went to an afternoon party. For several hours they visited various parties, consumed alcoholic beverages,

and screamed and shouted at each other. They parted briefly. When Miss Locke entered Newcomer's residence, she observed Newcomer with a ceremonial machete hanging from his belt. Newcomer and Miss Locke then started to wrestle over a container of marijuana. Newcomer threw Miss Locke against the wall and then threw pool balls around the room. He then began swinging the machete around the room. While swinging the machete, he struck Miss Locke on the right leg in the groin area. Miss Locke was rescued when a friend entered the room and sprayed Newcomer with mace.

Newcomer did not remember yelling or screaming, but did recall throwing the pool balls and swinging the machete. He chopped the door jambs in the living room and struck the pool table with the machete. He recalled striking Miss Locke with the machete but contended the striking of Miss Locke's leg was the continuation of a chopping action on the door frame.

Miss Locke filed claims against Newcomer for damages. While the claims were pending, Newcomer's insurer filed a declaratory judgment action seeking to avoid coverage under the personal liability provisions of its policy. Miss Locke then filed a lawsuit against Newcomer for compensatory damages for intentional assault, punitive damages for intentional assault, compensatory damages for wanton and reckless conduct, and punitive damages for wanton and reckless conduct. The homeowners policy provided under the coverage for personal liability section that the policy did not apply to bodily injury or property damage which was either expected or intended from the standpoint of the insured.

The Missouri court in *Hanover* first cited *Subscribers at Auto. Club, etc. v. Kennison*, 549 S.W.2d 587 (Mo. App. 1977). In *Subscribers*, the court considered whether a dispute was within the exclusion language of a policy, which declared that the policy did not apply to bodily injury or property damage caused intentionally by or at the direction of the insured. The *Subscribers* court declared:

"Intended results are not only those results which are desired. If a person knows consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. [Citation omitted.] Therefore, an admission of specific

intent is not the only way to show intent to cause harm; it can be inferred from facts and circumstances surrounding an act." 549 S.W.2d at 590-91.

The Missouri court in *Hanover* then noted that in *Butler v. Behaeghe*, 37 Colo. App. 282, 548 P.2d 934 (1976), the homeowner insured was denied coverage when he caused impairment of the sight of another when he swung a pipe at him. The *Butler* court stated:

"Where coverage is excluded if bodily injury is 'intended or expected' by the insured, such exclusion is inapplicable if and only if the insured acts without any intent or any expectation of causing any injury, however slight. And conversely, such exclusion is applicable if the insured acts with the intent or expectation that bodily injury will result even though the bodily injury that does result is different either in character or magnitude from the injury that was intended." 37 Colo. App. at 287.

The Missouri court in *Hanover* determined that the act of an insured need not be expressly intentional but can be inferred. An injury is expected or intended from the standpoint of the insured if a reason for an insured's act is to inflict bodily injury or when the character of the act is such that an intention to inflict an injury can be inferred as a matter if law. 585 S.W.2d at 289.

We agree with the district court's conclusion that under Missouri law, Safeco's policy excluded coverage if bodily injury is intended or expected by the insured.

### SUMMARY JUDGMENT—AMMIC POLICY

From January 1, 1982, to January 1, 1986, Spivey was also insured under an AMMIC Personal Catastrophe Liability Policy issued to General Motors Corporation. The AMMIC policy was an umbrella or excess liability insurance policy with a $50,000 retained limit. The insured, Spivey, was required to maintain underlying insurance of at least $50,000. Spivey carried underlying insurance of $100,000 with State Farm Fire and Casualty Company. The parties agree that the AMMIC policy is governed by Kansas law.

AMMIC incorporated the arguments and authorities raised and cited by Safeco and, in addition, claimed it had no duty to defend because Spivey had settled his claim against the underlying insurer for less than the policy coverage. The district court stated that its rulings on the AMMIC arguments were the same as its

rulings on the Safeco arguments. The district court then noted that summary judgment in favor of AMMIC was also proper because the AMMIC policy contained an excess insurance provision and the policy therefore did not qualify as valid and collectable insurance until the limits of the primary policy had been exhausted. It observed that insurance coverage which contains an excess provision is not valid or collectable insurance until the limits of the primary policy have been exhausted, citing *Wright v. Newman*, 598 F. Supp. 1178, 1197 (W.D. Mo. 1984). The district court pointed out the settlement by the plaintiff with State Farm in the amount of $15,725 did not exhaust the $50,000 retained limit required by the AMMIC policy. The district court concluded that because the settlement with State Farm did not exhaust that policy, AMMIC had no duty to defend or indemnify Spivey under the law.

The district court then noted that Spivey's alleged conduct were acts intended to injure M.P. The injury to M.P. was intended by Spivey and the result was reasonably anticipated, given the nature of the conduct by the insured. The district court ruled that there was no occurrence under the AMMIC policy because Kansas public policy prohibits insurance coverage for intentional and malicious acts. The district court, based on its reasoning as to Safeco's duty to defend its insured, concluded there was no coverage under the AMMIC policy; therefore, AMMIC had no duty to defend its insured.

Based on our previous discussion of the Safeco policy, we agree with the district court's conclusion that under the exclusions provision of its policy, AMMIC had no duty to defend or to indemnify Spivey.

## ATTORNEY FEES

The district court also ruled that Safeco was not liable for attorney fees under K.S.A. 40-256 because the case law relied on by Spivey in support of his claim was factually different from this case, the law was not settled in this area, and there was a good faith legal controversy.

A K.S.A. 40-256 motion or request for attorney fees is not a part of the merits of the underlying action, even though alleged in the petition, because attorney fees are not part of the com-

pensation for a plaintiff's injury. Attorney fees traditionally have been regarded by the legislature as costs awarded to the prevailing party.

Affirmed.

ABBOTT, J., not participating.

MILLER, C.J. Retired, assigned.