**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 9 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

FIRST NATIONAL BANK, Abilene, Kansas,

     Plaintiff - Appellant,

vs.

AMERICAN STATES INSURANCE COMPANY,

     Defendant - Appellee

  and

TRANSAMERICA COMMERCIAL FINANCE CORPORATION; ITT COMMERCIAL FINANCE CORPORATION; AT&T CREDIT CORP.; UNITED STATES OF AMERICA; STEELCASE, INC.; ATLIER INTERNATIONAL, LTD.; BRAYTON INTERNATIONAL, LTD.; DESIGNTEX FABRICS, INC.; HEDBERG DATA SYSTEMS, INC.; METROPOLITAN CORPORATION; REVEST, INC.; STEELCASE FINANCIAL; STEELCASE CANADA, INC.; STEELCASE FINANCIAL SERVICES, LTD.

     Defendants.

No. 96-3164
(D.C. No. 95-1132-JTM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **EBEL**, and **KELLY**, Circuit Judges.

---

In this diversity case, Plaintiff-Appellant First National Bank (FNB) appeals the denial in part of its motion for summary judgment on its breach of insurance contract claim and associated claims for prejudgment interest and attorney's fees. Our jurisdiction arises under 28 U.S.C. § 1291.

Background

The main issue in this case is whether the insurer, Defendant-Appellee American States Insurance Company (ASIC), properly paid only its named insured for loss of business income, or should have jointly paid either the named insured's mortgage holder or loss payee (referred to as FNB). For appeal purposes, the mortgage holder and loss payee are effectively FNB because it is a successor in interest to both. The case was decided by the district court, and is submitted to this court, on stipulated facts and documents.

On November 26, 1992, a severe snow storm hit Dodge City, Kansas, causing a roof collapse at Dodge City Office Equipment (DCOE), the named

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

insured in this case. The roof collapse substantially damaged the building, destroyed most of the inventory, and caused an ongoing loss of income for DCOE. DCOE sought insurance proceeds from ASIC under its businessowner's insurance policy.

ASIC made various payments under the policy jointly to DCOE and the mortgage holder or loss payee, but made some payments solely to DCOE. Specifically, ASIC paid DCOE as sole payee $20,000 for contents loss, and a total of $117,089 for loss of business income. On February 28, 1995, FNB demanded that it be paid these same amounts on the theory that it should have been paid jointly with DCOE. ASIC refused payment on March 10, 1995. On November 6, 1995, the parties stipulated in the district court that the $20,000 check for contents loss should have been paid jointly to FNB's predecessor in interest, and ASIC paid FNB this $20,000 on December 20, 1995, prior to entry of judgment below.

The district court granted summary judgment in part to FNB on the $20,000 contents loss payment and related prejudgment interest, but denied summary judgment to FNB on its claims for the loss of business income proceeds plus prejudgment interest and all attorney's fees. The district court reasoned that the plain, unambiguous language of the provisions for joint payment of proceeds to mortgage holders and loss payees did not encompass proceeds for loss of business

income. The district court also reasoned that an attorney's fee award was inappropriate with respect to the contents loss dispute because ASIC paid the $20,000 to FNB prior to judgment, and because FNB's larger claim was denied. FNB seeks payment of the $117,089 in lost business income, plus associated prejudgment interest and attorney's fees, as well as attorney's fees with respect to the $20,000 contents loss dispute.

Discussion

FNB argues that it should have been jointly paid loss of business income proceeds (1) based on the language of the policy; (2) because the policy on this point is ambiguous and therefore should be construed against ASIC; and (3) based on the policy's structure and purpose. The clear and unambiguous language of the policy provides otherwise.

First, FNB argues that it is entitled to joint payment of loss of business income proceeds because the policy provides coverage for such loss but does not clearly and unambiguously exclude mortgage holders or loss payees from joint payment. Coverage for loss of business income is provided in an additional coverage paragraph with no specification as to who, other than the named insured, is to be paid for such loss. FNB misunderstands the relevant burdens in insurance coverage cases. "The assured has the burden of proving that the loss was of a type included in the general coverage provisions of the insurance contract." Clark

- 4 -

Equip. Co. v. Hartford Accident & Indem. Co., 608 P.2d 903, 906 (Kan. 1980).  If a policy does contain broad promises of coverage to a mortgage holder or loss payee, then "the insurer has the burden to prove the loss is excepted or excluded by a specific provision of the policy."  Shelter Mut. Ins. Co. v. Williams, 804 P.2d 1374, 1383 (Kan. 1991) (quotation marks and citations omitted).  Here, the loss of business income paragraph does not broadly promise joint payment to mortgage holders or loss payees.  Therefore, no burden is on ASIC to point to language specifically excluding joint payment.

Regardless, the clear and unambiguous policy language provides that mortgage holders and loss payees do not participate in proceeds for loss of business income.  An insurance policy is a written contract, and its terms are to be given a reasonable construction, considering the entire contract together and giving effect to every part.  See Blair v. Automobile Owners Safety Ins., 290 P.2d 1028, 1030 (Kan. 1955).  The language contained in a policy should be construed according to the plain, ordinary, and popular sense of the words used.  See Wing Mah v. United States Fire Ins. Co., 545 P.2d 366, 369 (Kan. 1976).

The mortgage holder paragraph provides as follows: "2.  Mortgage Holders . . . b.  We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear."  Aplt. App. at 222.  Thus, mortgage holders are paid for

- 5 -

loss only to buildings or structures, which FNB concedes does not include

business income. The loss payable paragraph provides as follows:

> A. LOSS PAYABLE
> For Covered Property in which both you and a Loss Payee shown
> in the Schedule or in the Declarations have an insurable interest,
> we will:
> 1. Adjust losses with you; and
> 2. Pay any claim for loss or damage jointly to you and the
> Loss Payee, as interests may appear.

Aplt. App. at 231. A loss payee is paid only for "Covered Property," defined as

"buildings" and "business personal property." FNB concedes, as it must, that

buildings and business personal property do not include business income. No

other language in the policy addresses joint payment to either mortgage holders or

loss payees. Thus, the plain, unambiguous language of the policy does not

broadly promise coverage for lost business income to mortgage holders or loss

payees. On the contrary, the plain language limits mortgage holders' and loss

payees' participation in proceeds to those for loss to buildings, structures, and

business personal property.

Second, FNB argues that the policy language is ambiguous and therefore

must be construed against ASIC so that FNB should have been paid jointly for

loss of business income. The basis for FNB's ambiguity argument is the language

at the end of both the mortgage holder and loss payable paragraphs. Both

paragraphs provide that if the named insured is denied coverage due to its bad

- 6 -

acts or failure to comply with the terms of the policy, and if the mortgage holder or loss payee complies with certain conditions, then the mortgage holder/loss payee will still be paid. At the end of both paragraphs, the policy states that "[a]ll of the terms" of the policy "will then apply directly" to the mortgage holder or loss payee. Aplt. App. at 222, 231.

FNB contends that this last sentence is ambiguous as to what happens if all of the previously-listed conditions are not met--i.e., the named insured is not denied coverage for its acts or failure to comply with the policy. FNB posits that three potential meanings otherwise exist if all of the terms of the policy do not apply directly to the mortgage holder/loss payee. FNB urges a potential meaning under which all of the terms of the policy apply indirectly to the mortgage holder and loss payee, so that the business income coverage would apply to mortgage holders and loss payees.

There is, however, no such ambiguity. "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co., 810 P.2d 283, 285 (Kan. 1991). An insurance policy is not ambiguous unless a natural reading of the policy leaves a genuine uncertainty as to which of two or more possible interpretations is proper. See Spivey v. Safeco Ins. Co., 865 P.2d 182, 185 (Kan. 1993). Although

ambiguities in insurance contracts are generally construed against the insurer, an ambiguity must not be created where none exists. See Shelter Mut. Ins. Co., 804 P.2d at 1379.

The clear and unambiguous language of the policy precludes the supposed meanings offered by FNB. As discussed above, the mortgage holder and loss payee paragraphs only specify payment to a mortgage holder or loss payee for coverages which do not include lost income. Consequently, if the named insured is not denied coverage due to its acts or failure to comply with the policy, then only the named insured is paid any loss of business income proceeds. Whether it would have been wise for the mortgage holder or loss payee to have sought a provision for joint payment of lost business income proceeds or whether it would have been a better contract with such a provision is irrelevant to the task at hand. The function of the court is to enforce an unambiguous contract as made, not to make another contract for the parties. See Farm Bureau Mut. Ins. Co., 810 P.2d at 286.

FNB contends that the business income paragraph does not specify who is paid proceeds for this coverage, and that the policy therefore should be construed against ASIC. As the policy does specify who is to be paid, this argument is unavailing. A natural and reasonable reading of the policy, in the absence of any mortgage holder or loss payee paragraphs, leads to only one conclusion. The

named insured is to be paid. <u>See</u> Aplt. App. 212, 214. The business income coverage provision unambiguously states that ASIC "will pay for the actual loss of Business Income <u>you</u> sustain . . . ." Aplt. App. at 214 (emphasis added). The property coverage form states that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations." Aplt. App. at 212.

Finally, FNB argues that it should have been paid jointly based on the structure and purpose of the policy. First, FNB contends that the policy should be construed as a whole, and therefore the provisions for mortgage holder and loss payee payment should apply to the business income coverage paragraph. No degree of holistic construction, however, can alter the plain language of the mortgage holder and loss payee paragraphs which specify only joint payment for losses that do not include lost business income.

Second, FNB argues that the purpose of the policy is to indemnify the named insured, mortgage holder, and loss payee for specified causes of loss, and that the policy should not be construed to defeat this purpose. According to FNB, this loss was covered and the mortgage holder and loss payee should be indemnified just as was the named insured.

Assuming the general purpose of the policy is to indemnify, such indemnification must, of course, be according to the policy's terms. Under this policy, the mortgage holder's indemnification is limited to loss of or damage to

buildings and structures, and the loss payee's indemnification is limited by the plain language to loss to "Covered Property." Although it is always proper to consider the purpose of a policy when construing its terms, an alleged purpose of a policy cannot trump its clear and unambiguous language. FNB's approach treats indemnification as an all or nothing proposition, in spite of the policy's terms. This policy indemnifies mortgage holders and loss payees for the most common types of loss; if FNB wanted additional coverage, it was incumbent upon it to insist upon such language as a condition of granting credit. We note that FNB's claims for prejudgment interest and attorney's fees associated with the business income proceeds dispute are moot based on our conclusion that FNB was not entitled to joint payment of these proceeds.

FNB seeks attorney's fees with respect to the $20,000 contents loss proceeds which ASIC admitted before judgment should have been paid jointly. FNB maintains that fees should be awarded because FNB demanded payment on February 28, 1995, but ASIC did not pay the $20,000 until December 20, 1995, after FNB filed a complaint, ASIC answered, and discovery was about to begin.

The statute under which FNB claims attorney's fees provides

[t]hat in all actions hereafter commenced, in which judgment is rendered against any insurance company . . . , if it appears from the evidence that such company, society or exchange has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action . . . .

Kan. Stat. Ann. § 40-256 (1993). "Where the only issue between the parties is a factual dispute with respect to coverage under an insurance policy, and the insurer has refused to pay the full amount of the insured's loss for such reason, the phrase 'without just cause or excuse,' as used in [Kan. Stat. Ann. § 40-256], means a frivolous or unfounded denial of liability." Koch v. Prudential Ins. Co. of Am., 470 P.2d 756, 760 (Kan. 1970). A refusal of payment is not unfounded or frivolous if there exists a good faith legal controversy as to coverage or a bona fide and reasonable factual dispute. See Clark Equip. Co., 608 P.2d at 907.

The district court denied fees, reasoning that the larger portion of FNB's claim was denied and that ASIC paid the claimed $20,000 amount before judgment so that FNB could not demonstrate a refusal to pay. Neither of these reasons, however, is a proper one for the denial of fees. First, the statute does not require refusal of payment through to judgment for the insured to be entitled to attorney's fees. Fee awards are provided for in cases like these because insureds should not have to bear the cost of bringing suit to compel an insurer to abandon an unfounded and frivolous denial of coverage. In furtherance of this rationale, Kansas courts have explained it is the insurer's conduct prior to the commencement of suit that counts. See Sloan v. Employers Cas. Ins. Co., 521 P.2d 249, 250 Syl. ¶ 1 (Kan. 1974). The insurer's duty to investigate arises, and must be fulfilled, before refusing payment. See Lord v. State Auto. and Cas.

Underwriters, 491 P.2d 917, 923 (Kan. 1971). Thus, the justification for a refusal to pay is measured at the time of refusal. See Koch, 470 P.2d at 760; Wolf v. Mutual Benefit Health and Accident Ass'n, 366 P.2d 219, 228 (Kan. 1961). The circumstances at the time of refusal are judged "as they would appear to a reasonably prudent man having a duty to investigate in good faith and to determine the true facts of the controversy." Watson v. Jones, 610 P.2d 619, 626 (Kan. 1980). If refusal was unfounded and frivolous at that time, a settlement offer, or even later payment, after the filing of a complaint will not immunize the insurer from an appropriate fee award. See Sloan, 521 P.2d at 251; Wolf, 366 P.2d at 228.

Second, a complete denial of fees is not justified on the basis that the larger portion of FNB's claim was denied. Again, the fee award statute protects insureds from paying attorney's fees to compel insurers to pay due proceeds. This is true regardless of the fraction of an overall claim which those proceeds represent. If the elements of the fee award statute are present with respect to some portion of the claim, the judgment creditor is entitled to fees attributable to the dispute over that portion. That the judgment is only for a portion of the plaintiff's original claim is not made relevant by the Kansas statute; it is therefore only relevant to accurate calculation of the awarded fee.

Because the two reasons given by the district court for its denial of fees

with respect to the contents loss dispute are not proper, an award of fees is appropriate if ASIC's refusal of payment was without just cause or excuse. This case was resolved by the district court on stipulated facts and documentary evidence so that we can review de novo whether those facts establish just cause or excuse. See Clark Equip. Co., 608 P.2d at 906.

ASIC's refusal letter only states that ASIC did not think it was obligated to pay the proceeds again. ASIC did, however, assert numerous defenses in its answer. We are aware that the justification for refusal of payment is measured at the time of refusal, but consider, in ASIC's favor, all of these defenses as potential reasons for refusal at that time.

Assuming ASIC refused payment on March 10, 1995, for all of those reasons, none of them constitutes just cause or excuse. First, ASIC asserted that FNB was not named as a loss payee and therefore was not entitled to proceeds for contents loss. FNB's predecessor, the Small Business Administration, was named as loss payee, and FNB's demand letter detailed this relationship. Second, ASIC asserted that FNB's claim was limited by the terms of the policy. On the contrary, the terms explicitly provide that the loss payee is entitled to joint payment of proceeds for loss of Covered Property, which is defined to include contents loss. Third, ASIC asserted that the policy does not allow for the assignment of benefits. Admittedly, the policy does not allow assignment by the

- 13 -

named insured, but there is no prohibition of assignment by a loss payee. Finally, ASIC asserted that FNB did not fulfill the conditions in the policy on timely notice of loss. The named insured, however, had already fulfilled all of the necessary conditions, as evidenced by the fact that ASIC paid DCOE $20,000 for contents loss, albeit improperly.

ASIC's assertion that it should not have to pay again as well as all of the defenses eventually asserted in ASIC's answer were for the foregoing reasons frivolous and unfounded. None truly presented a legal controversy or reasonable factual dispute. Thus, ASIC refused payment without just cause or excuse and we remand for calculation and award of the attorney's fees attributable to the contents loss dispute.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.


Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge