(988 P.2d 749)

No. 81,107

QUALITY PAINTING, INC., and HOUSTON GENERAL INSURANCE COMPANY, *Appellants*, v. TRUCK INSURANCE EXCHANGE, *et al.*, *Appellees*.

Opinion filed September 10, 1999.

*Ernest C. Ballweg*, of Johnston, Ballweg & Tuley, L.C., of Overland Park, for the appellants.

*Bren Abbott*, of Law Offices of Kenneth J. Berra, of Kansas City, Missouri, for the appellee.

Before PIERRON, P.J,. RULON, J., and ROBERT J. FLEMING, District Judge, assigned.

PIERRON, J.: Quality Painting, Inc., (Quality) and Houston General Insurance Company (Houston) (collectively appellants) appeal the district court's granting of summary judgment in favor of Truck Insurance Exchange (Truck) and Farmers Insurance Group of Companies. Appellants seek reimbursement from Truck for a share of the costs of defending a sexual harassment suit against Quality based upon Truck's legal obligation to defend under its insurance policy.

The facts in this case are for the most part undisputed. The conflict involves the interpretation of an insurance contract.

In September 1995, Ruby Pfeiffer, a former employee of Quality, filed a four-count petition against Quality and its owner, Robert Holloway. The petition alleged sexual harassment and discrimination; negligence in failing to provide a workplace free of such misconduct; and the tort of outrage against Quality and Holloway. The petition also alleged, against Holloway only, malicious communi-

cation to third persons of false information regarding Pfeiffer's private sex life.

The conduct underlying Pfeiffer's claims was alleged to have occurred between November 1990 and March 8, 1994. Truck insured Quality under a commercial garage liability policy from March 22, 1990, through April 11, 1993. Houston insured Quality under a general liability policy for the remainder of the relevant time period.

Quality made a demand on both Truck and Houston to provide a defense against Pfeiffer's lawsuit. Houston agreed to provide a defense. Truck conducted an investigation, during which Holloway advised Truck that he was the owner and sole proprietor of Quality. Truck did not provide a defense. In a letter detailing its reasons, Truck said the injuries claimed by Pfeiffer did not meet the definition of bodily injury in the insurance contract. Truck also stated:

"Additionally, the plaintiff [Pfeiffer] has cited allegations of her damages resulting from activities of sexual harassment that constitute intentional acts which as such, would not qualify as a matter of liability as caused by negligence. The allegations do not meet the definition of occurrence as stated above because the definition excludes events or series of events which were 'expected' or 'intended' from the standpoint of the insured."

Quality and Houston expended $33,082.38 in defending the Pfeiffer lawsuit, and they argue Truck should reimburse Quality $23,819.31 (72% of $33,082.38), representing the proportionate time that Truck insured Quality. Quality and Houston also claim to have paid $12,000 to settle Pfeiffer's lawsuit, $7,000 by Houston and $5,000 by Quality.

The district court granted summary judgment in Truck's favor. The court found that all of Pfeiffer's claims were based upon intentional acts committed by Holloway which were imputed to Quality. Quality and Houston appeal.

Appellants contend that Truck was obligated to provide Quality a defense since Pfeiffer's petition for damages asserted claims of negligence. Appellants argue that an insurance company's duty to defend its insured is not measured by either the proof which may be adduced at trial or the outcome of the litigation. Appellants also argue that Quality is not subject to Truck's policy exclusions.

On the other hand, Truck argues that it was under no duty to defend because the policy it issued to Quality afforded no possibility of coverage for Pfeiffer's claim. Truck contends that all of Pfeiffer's claims were based upon intentional acts committed by Holloway, and those actions were imputed to Quality. Truck also states that the resulting injuries did not fall within the coverage of the insurance policy because they were not caused by an accident and did not fall within the policy exclusions because they were expected or intended.

The standard of review for a motion for summary judgment is well established. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. On appeal we apply the same rules, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131-32, 955 P.2d 1189 (1998). The case at bar involves the interpretation of a contract, which allows this court an unlimited standard of review. *In re Estate of Van Der Veen*, 262 Kan. 211, 212, 935 P.2d 1042 (1997).

The "Liability Coverage" section of the policy issued by Truck to Quality provides as follows:

"We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations' other than the ownership, maintenance or use of covered 'autos.'

"We have the right and duty to defend any 'suit' asking for these damages. However, we have no duty to defend 'suits' for 'bodily injury' or 'property damage' not covered by this Coverage Form."

The "Exclusions" section of Truck's policy covering Quality provided that the insurance did not apply to: " 'Bodily injury' or 'property damage' expected or intended from the standpoint of the 'insured.' "

The court in *Spivey v. Safeco Ins. Co.*, 254 Kan. 237, 246, 865 P.2d 182 (1993), set forth the general principles regarding an insurance company's duty to defend:

"The duty to defend and whether the policy provides coverage are not necessarily coextensive. The duty to defend arises whenever there is a "potential of liability" under the policy. The insurer determines if there is a potential of liability under the policy by examining the allegations in the complaint or petition and considering any facts brought to its attention or which it could reasonably discover. Where a petition alleges an act that is clearly not covered, for example, that the defendant acted willfully and intentionally, there would be no potential of liability under the policy for intentional acts. Where the complaint alleges both a negligent and intentional act, these alleged facts give rise to the potential for liability, and the duty to defend arises. [Citation omitted]"

*Spivey* is applicable, but not dispositive, to the present case, since all the claims in *Spivey* involved intentional conduct. In *Spivey*, the appellant-insured filed his action against Safeco Insurance Company (Safeco) and American Manufacturers Mutual Insurance Company (AMMIC), alleging that they had breached their contract to defend him in a civil tort action. Spivey was a superintendent of a department for General Motors Corporation. A female employee in Spivey's department filed suit against him, alleging that he had made sexual demands and committed intentional torts of assault, battery, and infliction of emotional distress and that he had intentionally inflicted bodily harm upon her. Spivey requested that his insurance carriers defend him, but they refused. After successfully defending the suit without their assistance, Spivey filed an action against Safeco and AMMIC, alleging breach of contract for failure to defend him in the federal action. 254 Kan. at 238-39.

The trial court granted summary judgment in favor of the insurance companies. The *Spivey* court affirmed, holding that the insurance contract was not ambiguous and that the exclusionary clause of the contract applied to Spivey's situation. The exclusionary clause excluded from coverage an insured's intentional acts. The *Spivey* court held that the insurance companies had no duty to defend because Spivey was not sued for having sex with the employee, but for intentionally injuring her by threats with a knife and gun, by shooting a gun at her, and by forcing sexual acts upon her. The court found the term "accident" in Spivey's policy did not cover this situation because the alleged acts were intentional.

Thus, the *Spivey* court ultimately held:

"Under the present code of civil procedure, an insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend. If those facts give rise to a 'potential of liability,' even if remote, under the policy, the insurer bears a duty to defend. *MGM, Inc. v. Liberty Mut. Ins. Co.*, 253 Kan. 198, 202, 855 P.2d 77 (1993). The duty to defend rests primarily on the possibility that coverage exists, and the possibility of coverage must be determined by a good faith analysis of all information the insurer may know or could have reasonably ascertained. If ambiguities in coverage, including exclusionary clauses, are judicially determined against the insurer, the ultimate result controls the insurer's duty to defend. [Citation omitted.]" 254 Kan. at 245-46.

*Spivey* clearly applies to all the intentional acts alleged in Pfeiffer's petition. The appellants distinguish *Spivey* based on the negligence claims raised in Pfeiffer's petition, namely that Holloway and Quality owed a duty to its employees to provide a safe place in which employees can work free of sexual assault, harassment, intimidation, and improper advances of both a verbal and physical nature. Since Pfeiffer raised a claim of negligence, the appellants argue there was a possibility of coverage and Truck owed Quality a duty to defend the action.

The problem with the appellants' analysis is that it fails to discuss an insurance company's right to go outside of a petition to determine whether there is a possibility of liability on the insurance carrier. "The insurer determines if there is a potential of liability under the policy by examining the allegations in the complaint or petition and considering any facts brought to its attention or which it could reasonably discover." *Spivey*, 254 Kan. at 246. The insurer is subject to a good faith analysis of the information known to the insurer in deciding whether it will defend a lawsuit.

Here, Pfeiffer's petition alleged that Holloway was the owner of Quality and that he sexually harassed her despite her requests and demands that the conduct stop. Pfeiffer also alleged that Holloway and Quality were negligent in that they breached their duty to provide a workplace free of unwanted sexual assault, harassment, advances, and intimidations and breached their duty to take the steps necessary to insure that such conduct did not occur.

The appellants argue that notwithstanding the intentional nature of Holloway's alleged acts, the potential for coverage existed for

the negligence claim against Quality because Quality could be viewed as a nonculpable insured which is vicariously liable for Holloway's misconduct. The appellants argue that Quality, as a separate legal entity and the "insured" under the policy, should be entitled to a defense on the allegation that Quality negligently failed to supervise Holloway.

Several facts in this case weigh against a finding of coverage for the negligence of Quality. Pfeiffer's petition states that Holloway was the owner of Quality and that he had the power to hire and fire employees. Sheldon Castleman, an employee of Farmers and the claims adjuster for Truck who investigated the allegations involving Pfeiffer's petition, stated that during his interview with Holloway, Holloway said he was the owner and sole proprietor of Quality.

The district court in the present case correctly relied on *Smith v. Printup*, 254 Kan. 315, 349, 866 P.2d 985 (1993), in finding that a corporation's ongoing tolerance of a continuing course of tortious conduct, like sexual harassment, logically amounts to ratification of that conduct. The *Smith* court cited with approval cases from other jurisdictions, stating:

"[I]f corporate management obviously tolerates the kind of conduct that causes the injury, it amounts to ratification and/or authorization. Most of these cases, however, involve a continuing course of tortious conduct. *Khalid Bin Talal Etc. v. E.F. Hutton & Co.*, 720 F. Supp. 671 (N.D. Ill. 1989) (recurring misconduct in commodities trading); *Hart v. National Mortgage & Land Co.*, 189 Cal. App. 3d 1420, 235 Cal. Rptr. 68 (1987) (sexual harassment); *Wirig v. Kinney Shoe Corp.*, 448 N.W.2d 526 (Minn. App. 1989) (sexual harassment). In those cases, ongoing tolerance logically amounts to ratification." 254 Kan. at 349.

Quality clearly tolerated or ratified Holloway's intentional sexual harassment of Pfeiffer. Holloway is the sole owner and proprietor of Quality. Holloway and Quality are one and the same for our purposes. We agree with the district court that it would defy logic to say that Quality might not have authorized or ratified Holloway's intentional actions. Quality cannot be regarded as a negligent, nonculpable insured. It would be directly liable for sexual harassment by Holloway.

Further, we find the court's decision in *Coit Drapery Cleaners, Inc. v. Sequoia,* 14 Cal. App. 4th 1595, 18 Cal. Rptr. 2d 692 (1993), to be persuasive. In *Coit,* the individual who did the harassing was Dr. Kearn—the corporation's founder and president, a major stockholder, and the chairman of the board of directors. The court found the evidence clearly indicated that Dr. Kearn's outrageous conduct was affirmatively known and ratified by the board of directors and Coit Drapery Cleaners, Inc. The court found the insurance company had no duty to defend in such a situation. The court applied several principles that are particularly relevant to the case at bar.

Any hypothetical liability for mere negligence could not exist in the present case, but for the intentional acts of Holloway which occurred during the course of Pfeiffer's employment and which were ratified and condoned by Quality. We are dealing with a case in which the acts of sexual harassment alleged are, by their very nature, intentional and wrongful; it would be contrary to public policy to allow a wrongdoer who is directly and strictly liable for such wrongdoing, such as Quality, to shift the loss resulting from such an unlawful corporate practice to its insurer. See *Coit,* 14 Cal. App. 4th at 1606-07.

We recognize that the duty to defend is broader than the duty to indemnify and may extend to circumstances measured only by the objectively reasonable expectations of the insured. See *Spivey,* 254 Kan. at 246. However, we fail to see how any business could reasonably expect it would be defended against intentional misconduct claims where the sexual misconduct at issue was done by the sole owner and proprietor of the business. Holloway's conduct was inseparable from that of Quality. It was part of a consistent course of sexual harassment of an unconsenting victim, in an employment setting. All of this conduct was harmful and wrongful, as a matter of law; there are no unresolved factual issues as to the intentionality of Holloway's harassing conduct. There was no duty to defend.

The court in *Coit* also addressed a claim similar to the suggestion by Quality and Houston that Pfeiffer nevertheless asserted a claim of negligent supervision and control. The *Coit* court stated:

"[I]t is unavailing for appellants to suggest Coit was merely negligent in failing to enact and enforce corporate policies against sexual harassment, so as to prevent its president and major shareholder from attacking female employees. Coverage cannot be created by claimed negligence in failing to dissuade oneself from committing an intentional act, otherwise every intentional act would be covered and section 533 [California's Insurance Code section providing that an insurer is not liable for loss caused by the wilful act of the insured] would have no meaning. [Citation omitted.] We are required to interpret section 533 so as to give effect and meaning to all its provisions; just as we cannot allow insurers to recharacterize negligent conduct as intentional, we cannot allow the insured to recast intentional conduct as merely negligent. [Citation omitted.]" 14 Cal. App. 4th at 1609.

We have reviewed the later case authority cited by appellants and find it avails him not:

In *State Farm Ins. Co. v. Gerrity*, 25 Kan. App. 2d 643, 968 P.2d 270 (1998), a minor child attempted to sue Gerrity under his homeowner's policy for a sexual assault. The trial court granted State Farm's motion for summary judgment on the ground the policy did not provide coverage. We see nothing in the case aiding the appellants here.

*Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 961 P.2d 1213 (1998), dealt with a negligent hiring, retention, or supervision action where the employee was not the sole proprietor as in our case—although he was the spouse of the proprietor.

*First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 962 P.2d 515 (1998), was also a declaratory judgment action which found that an assault and battery exclusion was not ambiguous and that there was no coverage. We do not see how it aids the appellants.

Appellants present a better argument through their citation of *Brumley v. Lee*, 265 Kan. 810, 963 P.2d 1224 (1998). However, that case also did not deal with the central issue here, that being whether there could be a negligence action against a corporation for failing to supervise its sole owner/proprietor.

We find the district court did not err in granting summary judgment to Truck. The policy issued by Truck indemnifies Quality for damages resulting from bodily injury caused by an accident. The injuries claimed by Pfeiffer were caused by Holloway's intentional acts of sexual harassment, which were excluded under the insurance policy. Truck verified that Holloway was the owner and sole

proprietor of Quality. Based on Holloway's intentional acts, the information raised in Pfeiffer's petition, and Truck's investigation of the facts, Truck was justified in determining that Quality's failure to prevent Holloway from sexually harassing Pfeiffer was not an accident and that any resulting injury would have been expected or intended by Quality. Since an intentional act was excluded from the insurance policy, there was no coverage for the alleged acts of Holloway and Quality, and since there was no coverage, there was no duty to defend.

Affirmed.