## PENNINGTON GROCERY CO. v. WOOD & CO.

No. 12293—Opinion Filed Oct. 30, 1923.

Rehearing Denied Feb. 19, 1924.

1. **Sales — Breach of Warranty — Action for Damages — Notice as Prerequisite— Completion of Contract.**

In an action for damages based upon a breach of warranty, express or implied, by a verbal contract made over the telephone for the purchase of a carload of potatoes, and the defendant pursuant to the agreement reshipped a car of potatoes, received from New Castle, Colo., from Shawnee to Ardmore, Okla., and the plaintiff receives the shipment, and, without inspection, rebills the same to customer at Healdton, Okla., and defendant, on same day car is shipped out of Shawnee, issues invoice containing printed provision requiring notice in case of claim for damage, as a condition precedent for bringing suit for damage, and sends same by mail to plaintiff, and which is received by plaintiff after the car of potatoes is sold and rebilled to the customer in Healdton, the invoice is no part of the contract of purchase and is not a proper defense in an action for damage for breach of warranty.

2. **Same—Constitutional Provision.**

In an action for damage, notice provided in invoice as above stated, limiting liability, and interposed as a defense is null and void, being in conflict with article 23, section 9, of Constitution of Oklahoma.

3. **Sales—Breach of Warranty—Remedies.**

In all actions for breach of warranty, express or implied, in the sale of goods the purchaser has two remedies: (1) He may rescind by promptly returning the article in a reasonable time after discovering the defects, and recover the consideration paid, or offer to restore the same on condition that the seller refund what has already been paid; or (2) he may keep the article and recover in damages the difference between what the article would have been worth if it had been as represented and its actual value.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Carter County; Thomas W. Champion, Judge.

Action by Pennington Grocery Company against Wood & Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded for new trial.

Potterf & Gray, for plaintiff in error.

Ledbetter & Ledbetter, for defendant in error.

Opinion by THREADGILL, C. This is an appeal by the plaintiff in error, plaintiff below, from a judgment of the district court of Carter county, in favor of the defendant in error, defendant below.

The action calls for damages in the sum of $515.03 and interest at six per cent. from January 1, 1918, for breach of implied warranty of fitness and soundness of a carload of potatoes.

The plaintiff had an agreement over long distance phone with a commission merchant in Oklahoma City to purchase of the defendant a carload of potatoes at $2.50 per cwt. After the agreement over the phone the defendant delivered to the plaintiff in Ardmore, November 3, 1917, a carload of potatoes weighing 32,170 lbs. at total price of $804.25, and without inspecting the car, but relying upon the warranty, it reshipped the potatoes to its purchaser and customer at Healdton, selling them at a $1.69 per bushel delivered. The potatoes were received in bad condition, had been frozen and were unfit for sale or use. They had to be sorted, and 287 bushels of them were frozen, rotten, and unmerchantable. Plaintiff allowed its customer credit for $485.03 on account of the bad potatoes, and $30 for the work of sorting them, making the amount of damages sued for. The defendant bought the car of potatoes at New Castle, Colo., about October 24, 1917, and rebilled them to the plaintiff from Shawnee to Ardmore on October 3, 1917, and without

any other understanding with the plaintiff than the agreement the plaintiff and the commission merchant had over the phone, the defendant, on the day it reshipped the car to the plaintiff at Ardmore, issued an invoice reading as follows:

"Pennington Grocery Company,
"Ardmore, Oklahoma.
"Bought
"Wood and Company
"Wholesale
"Fruits and Produce

"Shawnee, Oklahoma.
"Oct. 31, 1917.

"Terms: Cash. Shipped via Freight.

"No claims allowed unless made immediately on receipt of goods. After delivering goods to transportation co., our responsibility ceased.

"227 Sk Spuds     321970   2.50   804.25
"Car No. R. D. 10651
"Diverted from Shawnee          10-31-17
"Should be in Admore            11- 1-17
"Freight Fully Prepaid.

"United States Food
"Administration
"License No. g-13381."

This was received by the plaintiff after it had rebilled the car to its customer at Healdton. The defendant relied upon the printed stipulation in the invoice providing for immediate notice for its defense.

The plaintiff did not learn the definite amount of the damages till sometime in December, 1917, and being under the impression that the railroad company was liable for the damages, in November paid the defendant full amount for the car and sometime thereafter filed its claim for damages with the railroad company, and after some correspondence with the railroad was convinced that the potatoes could not have frozen from Shawnee to Ardmore, gave up its claim against the railroad company, and applied to the defendant for the amount of the damage about February 18, 1918, and the defendant rejected the claim and denied liability on the ground that plaintiff had failed to give notice as set out in the invoice.

The suit was brought April 16, 1919. May 14, 1919, defendant filed demurrer to the petition. September 18, 1919, the court overruled the demurrer. October 9, 1919, defendant filed answer denying the allegations of the petition generally, admitting the sale of the carload of potatoes through the commission merchant and the price stated, and as a second defense it pleaded the invoice above set out, and waiver of all rights to claim damages by the plain-

tiff receiving the car, paying for same, and failure to give immediate notice to the defendant. On October 30, 1919, plaintiff filed motion to strike the second ground of defense and on January 6, 1920, the court overruled same and on February 2, 1920, plaintiff filed reply denying generally the allegations of the answer and stating that the provision in the invoice for immediate notice was contrary to law and contrary to the Constitution of the state and not binding on the plaintiff.

These were the issues in the trial of the case to a jury on October 14, 1920, which resulted in a verdict and judgment in favor of the defendant.

1. The facts in the case are substantially as above stated and uncontroverted. The court, over the objections of the plaintiff, tried the case and submitted it to the jury by instructions on the theory that the invoice pleaded by the defendant was a subsisting and binding contract between the parties and immediate notice provided for therein meant reasonable notice. The court, in substance, instructed the jury that if the plaintiff received the car of potatoes and disposed of them, and they were damaged, and it failed to give reasonable notice of the damages to the defendant, it could not recover. The facts being uncontroverted, this was in effect an instruction to return a verdict in favor of the defendant. The determination of the correctness of the court's theory of the case is the only question necessary for us to consider and pass on. The plaintiff states in his assignments of error that:

"The court erred in holding valid and giving effect to the provision on the defendant's invoice requiring immediate notice of the claim."

The record shows that the plaintiff made the contract for the car of potatoes over the phone through a commission merchant, and without any other communications thereafter, the defendant shipped the car of potatoes from Shawnee to the plaintiff in Ardmore, sending invoice by mail, and before receiving the invoice the plaintiff rebilled the car to a customer in Healdton. Is this invoice any part of the contract between the parties? We do not think so. The general rule in transactions of this sort is stated in 13 C. J. 279 as follows:

"Terms brought to the acceptor's notice after the agreement is complete will not affect the agreement. Therefore, if a person cannot be charged with notice of the conditions contained in a paper which he accepts as containing the actual offer the very

instant they are delivered to him, even actual notice afterward will have no effect." Also 4 R. C. L. 240.

In the case of Atchison, T. & S. F. Ry. Co. v. Robinson, 36 Okla. 435, 129 Pac. 20. where the plaintiff made a verbal agreement with the defendant to ship a race animal from Kansas City, Mo., to Lawrence, Kan., and after all the arrangements were made by a verbal agreement the animal was loaded in the car with other race horses, and being injured in transit, upon suit for damage, the defendant pleaded a written contract which was issued after the animal was loaded for shipment limiting its liability, and this court in passing on this point states:

"Under these circumstances, having made a definite and complete agreement as to the shipment without mention of rate or limitation of liability, having surrendered certain of his rights, and certain rights having accrued to him under such an agreement, it was reasonable for him to assume that the printed contract presented to him under such circumstance contained no provisions which would take away the rights already accrued." Citing many authorities from different states to the same effect.

The rule is further illustrated in Dale v. See, 51 N. J. Law, 378, 14 Am. St. Rep. 688, where the court had under consideration notice after contract, and uses the following language:

"Notice of similar import such as all claims for shortage or breakage must be made in so many days, are not uncommon in invoices of goods sold and in bills given by carriers on the delivery of the goods to the consignee, and I am not aware that such notices have by any judicial decision been recognized as having any validity whatever, unless supplemented by some evidence that the original purchase or shipment was made upon such terms."

In a Montana case the court states the same rule. Brittain Dry Goods Co. v. Birkenfeld, 51 Pac. 263:

"A wholesale house sold goods to a customer through its traveling salesman, whose contract of sale was as follows: 'Order No. 102, Date taken, May 27th, JS. B. D. G. Co. of Helena, State Montana. How ship B. & M. When, Aug. 15. Dating, if any, Nov. 1. Salesman, Wagner.' The invoice sent subsequently contained the following, after setting out the dates and terms: 'All bills become due when parties suspend payment, assign, or sell out. All goods dated ahead are merely consigned and subject to replevin until dating has expired. Retention of the goods will be considered acceptance of all the terms hereon.' The cus-

tomer received and held the goods without objection, and prior to the expiration of the dating he assigned. Held, that the first order was a contract of unconditional sale; and that the conditions contained in the invoices were an attempt to modify an existing contract, which can be done only by consent of both parties thereto, and therefore said matter did not in itself modify the absolute sale."

In Louisville, etc., Ry. Co. v. Craycroft, 12 Ind. App. 203, 39 N. E. 533, it was held:

"Where the shiper loads his goods under a parol contract, it will govern and his rights of recovery will not be limited by a written contract handed to him just as they are being carried away."

2. The rule as above stated is embodied and expressed in article 23, section 9, of the Constitution of Oklahoma:

"Any provision of any contract or any agreement express or implied stipulating for notice or demand other than such as may be provided by law, as a condition precedent to establish any claim, demand or liability shall be null and void." C., R. I. & P. Ry. Co. et al. v. Harrington et al., 44 Okla. 41, 143 Pac. 325; M., K. & T. Ry. Co. v. Chowning et al., and Lusk et al. v. M., K. & T. Ry. Co. et al., 62 Okla. 302, 162 Pac. 1105; Brakebill v. C., R. I. & P. Ry. Co., 37 Okla. 140, 131 Pac. 540.

In the case of M., K. & T. Ry. Co. v. Williamson, 75 Okla. 36, 180 Pac. 961, the court laid down the rule as follows in first paragraph of the syllabus:

"Any provisions in a contract executed by a common carrier for instrastate carriage of freight, which attempt to abridge the time within which rights arising from the breach of such contract may be enforced, and which require notice after the breach of such contract as a condition precedent to maintaining an action therefor are null and void being in conflict with section 9, article 23, of the Constitution."

In the case of Brakebill v. C., R. I. & P. Ry. Co., supra, in passing on a contract between a common day laborer and railroad company providing for 30 days' notice as a condition precedent to bringing a suit for damages, the court uses the following language:

"Any agreement of common day laborer working in a railroad shop in this state, that if injured while in the employment of the railroad company, and a claim for damages therefor is made, that notice in writing of such claim shall be given the company within thirty days after the injury is received and if the failure to give such notice shall be a bar to the institution of any suit on

account of such injuries' is void because in conflict with section 9 of article 23, of the state Constitution."

If the rule is applicable in the case of a common day laborer working in a railroad shop and in case of a shipper of live stock, there is no good reason why it should not be applicable to a wholesale company shipping goods pursuant to a verbal contract for that purpose.

3. The general rule governing the rights of buyers in transactions, such as the one at bar, in actions for breach of warranty, express or implied, is as follows:

"The purchaser has two remedies. (1) He may rescind by promptly returning the article in a reasonable time after discovering the defects and recover the consideration paid, or offer to restore the same on condition that the seller refund what has already been paid; or (2) He may keep the article and recover in damages the difference between what the article would have been worth if it had been as represented and its actual value." International Harvester Co. v. Lawyer, 56 Okla. 207, 155 Pac. 617.

The plaintiff saw fit in the case at bar to avail himself of the second remedy, and to do this requires no notice as a condition precedent in bringing his action.

Justice Hayes states the rule applicable to this case in J. Rosenbaum Grain Co. v. Pond Creek Mill & Elevator Co., 22 Okla. 555, 89 Pac. 331, as follows:

"Where wheat is sold under an executory contract and the wheat delivered is inferior in quality to that contracted to be sold, the buyer may retain the inferior wheat delivered and recover the damages he has sustained by reason of the breach of the sales contract without returning the wheat or without giving any notice to the seller." 35 Cyc. 420 and 423; 24 R. C. L. 239 U, 244; 30 A. & E. Ency. of L. 183; Rogers Lbr. Co. v. Judd Lbr. Co., 52 Okla. 387. 152 Pac. 150; Spaulding Mfg. Co. v. Holiday. 32 Okla. 823, 124 Pac. 35; Tacoma Coal Co. v. Bradley, 2 Wash. 600; Larson v. Aultman & Taylor Co., 86 Wis. 281, 39 Am. St. Rep. 893.

Therefore, reviewing the whole record and discussion and authorities cited, we must conclude that the invoice pleaded by the defendant and offered as a defense to the plaintiff's action for damages was not a legal defense, and this cause should be reversed and remanded for new trial, and we do hereby so recommend.

By the Court: It is so ordered.