Albert **BRAUER** et al., Plaintiffs-
Appellees,

v.

**REPUBLIC STEEL CORPORATION,**
Defendant-Appellant.

No. 71–1258.

United States Court of Appeals,
Tenth Circuit.

June 5, 1972.

Rehearing Denied July 7, 1972.

Gilbert G. Lundstrom, Lincoln, Neb. (Woods, Aitken, Smith, Greer, Overcash & Spangler, Richard W. Smith, Lincoln, Neb., and Franklin D. Gaines, Augusta, Kan., on the brief), for plaintiffs-appellees.

Emmet A. Blaes, Wichita, Kan. (Richard A. Loyd, Timothy E. McKee, and Jochems, Sargent & Blaes, Wichita, Kan., on the brief), for defendant-appellant.

Before BREITENSTEIN, HILL, and McWILLIAMS, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In this diversity action, brought in the United States District Court for the District of Kansas and tried to a jury, plaintiffs-appellees had judgment for $273,736.00 against defendant-appellant, Republic Steel Corporation, on claims of breach of warranty and negligence arising out of the sale of pipe in Oklahoma for use in Kansas.

Plaintiffs, owners of adjacent oil leases in Kansas, entered into a unit operating agreement for the secondary recovery of oil by a waterflood project. A waterflood project is a process for the recovery of additional oil from a field whose primary deposits have been depleted. Pressurized salt water is injected through pipes into oil-bearing formations to raise the pressure and make recoverable otherwise unobtainable oil deposits. A detailed description of waterflooding appears in Tidewater Oil Company v. Jackson, 10 Cir., 320 F.2d 157, cert. denied 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 273.

Brauer was designated unit operator and retained C.R.A., Inc., to do the engineering work. On C.R.A.'s recommendation, Brauer placed an order with McAdams Pipe & Supply Company of Bristow, Oklahoma, a supplier for Republic, for the purchase of Republic pipe. The pipe was delivered in July-August, 1963, and water was first injected on October 1, 1963. Breaks or leaks in the pipeline began in the spring of 1964 and continued in increasing intensity until it was necessary to replace the pipe. The breaks were along the seams of the pipe.

Plaintiffs say that the failures were caused by the particular nature of the weld seam in that the electric weld caused the microstructure of the weld to differ from that of the surrounding pipe thereby making the weld anodic to the rest of the pipe. There was evidence that the anodic character of the weld seam could have been rectified by a process known as normalizing or annealing the pipe after it had been welded. Republic contends that the pipe failures were due to the corrosive nature of the soil in which the pipe was buried.

The breach of warranty claims are based on representations made by Myers, a sales representative of Republic, to

C.R.A. engineers in April, 1963. The negligence claim is based on the failure to normalize or anneal the pipe after the seam had been welded.

The first question is whether the action is barred by the applicable statutes of limitation. The pipe was purchased in Oklahoma in May, 1963, and delivered to the project in Kansas about two months later. The first use was in October and the first leaks occurred in the spring of 1964. In answer to a special interrogatory the jury found "that the date on which plaintiffs first knew or should have known that the pipe in question was not fit for the purpose for which it was sold, was January, 1965." The action was brought by Brauer on October 7, 1966, and alleged breach of warranty. By an amended complaint filed on August 1, 1967, Olson and C.R.A. were brought in as additional plaintiffs and the allegations were expanded to include the claim of negligence.

The Oklahoma version of the Uniform Commercial Code has a five-year statute of limitation on contract actions, including warranty claims. 12A O.S.A. § 2–725. Although Kansas had adopted the Uniform Commercial Code, the claims with which we are concerned arose prior thereto and must be determined under the then law. The effective Kansas statutes provided a three-year limitation on warranties such as found in this case, 4 K.S.A. (1964) § 60–512, and a two-year limitation on negligence actions, 4 K.S.A. (1964) 60–513. The trial court held that the action was not barred.

██ The first problem is whether the statutory limitations of Kansas, the state of the forum, or of Oklahoma, the state where the contract of sale was made, apply. In a diversity case, the federal court follows the conflict principles of the forum state. Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477, and Smith v. Greyhound Lines, Inc., 10 Cir., 382 F.2d 190, 192. Kansas has held that the law of the forum governs the application of statutes of limitation, unless some ex-

ception is provided. Green v. Kensinger, 199 Kan. 220, 429 P.2d 95, 98. Republic argues that there is no exception, and for purposes of this appeal we will assume that Kansas would apply its statutes of limitation. In any event, the warranty claims are clearly not barred under the five-year Oklahoma statute.

We turn to the Kansas three-year statute. It does not say when an action accrues and limitations begin to run. In reliance on Freeto Construction Co. v. American Hoist & Derrick Co., 203 Kan. 741, 457 P.2d 1, Republic argues that the period began to run at the time of delivery of the pipe in July-August, 1963, and, hence, an action brought in October, 1966, was barred. Although Freeto says that a warranty can be breached at the time of delivery, the Kansas Supreme Court pointed out that the Freeto record contained nothing that suggested a prospective or continuing warranty. Ibid. at 4–5. In Freeto, like the case at bar, the cause of action arose before Kansas adopted the Uniform Commercial Code. The Kansas court noted this and said that the UCC provisions found in K.S.A. 84–2–725 were "substantially in accordance with decisions of this court." Ibid. at 6. Section 84–2–725(2) provides that

> " * * * where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

██ In the case at bar the representations which form the base of the warranty claims went to durability. They were of a prospective or continuing nature. In our opinion under pre-UCC law Kansas would recognize a prospective warranty and an action for breach thereof accrues when the breach is or should have been discovered. Substantial evidence sustains the jury's answer to the special interrogatory that the date when the plaintiffs first knew, or should have known, that the pipe was not fit for the purpose for which it was

sold was January, 1965. The original complaint was filed on October 7, 1966, well within the three-year period.

On the negligence claim the parties agree that the two-year Kansas statute applies. 4 K.S.A. (1964) § 60–513 provides:

"* * * if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, * * *."

Republic says that the statute began to run in June, 1964, when "major" leaks occurred. Testimony for the plaintiffs was that a certain number of leaks are to be expected in any new waterflood and that the frequency of leaks did not cause concern until late 1964 or early 1965. As noted, the jury found that the date when the plaintiffs knew, or should have known, of the pipe failure was January, 1965.

■ This finding is attacked on the ground that the interrogatory was improperly worded because it did not use the wording of the Kansas statute which refers to when "the fact of injury becomes reasonably ascertainable." We believe that the interrogatory reasonably comports with the intent of the statute and that the language employed did not prejudice Republic.

The first amended complaint, which brought in Olson and C.R.A., Inc., as parties plaintiff and which for the first time asserted the claim of negligence, was filed on August 1, 1967. The record shows a July 17, 1967, stipulation that "in the amended pleadings, additional parties plaintiff could be included." The amendment alleged that Olson and C.R.A. "join this action as party plaintiffs at this time at the instance and request of the defendant, Republic Steel Corporation." This allegation was not denied by Republic.

Pursuant to Rule 15(c), F.R.Civ.P., the trial court related back the amended complaint to the filing date of the original complaint. Republic argues that this was improper. So far as the warranty claims are concerned the question of relation back presents no problem because the three-year statute had not run at the time of the amendment. The two-year statute on the negligence claim had run and the new claim cannot be maintained unless it is related back to the filing date of the original complaint. Rule 15(c) permits relation back if the new claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

■ A close identity of interest existed among Brauer, the original plaintiff, and Olson and C.R.A., the added plaintiffs. They owned the leases covered by the waterflood. The issues presented by the original complaint and by the amended complaint arose out of the same transaction or occurrence. There is no showing that Republic was either surprised or prejudiced by the relation back. In the circumstances of the case the allowance of the amendments and the relation back of the claims were in the sound discretion of the trial court, Travelers Indemnity Company v. United States, 10 Cir., 382 F.2d 103, 106, and that discretion was not abused. See 3 Moore's Federal Practice 2d Ed. ¶ 15.15[3] pp. 1025–1030 and ¶ 15.15[4.1] pp. 1043–1045. We are convinced that the claims asserted by the plaintiffs are not barred by any statute of limitations.

The statements of Republic's representative, Myers, were made in connection with the efforts of Tyler-Dawson Company, another Republic distributor, to sell the pipe. When Brauer decided to buy the Republic pipe he asked for bids by Tyler-Dawson and McAdams. The McAdams bid was low and was accepted. Republic argues that no sale resulted from the Tyler-Dawson effort and hence, the Myers statements may not be considered.

■■ The argument is that the purchase from McAdams destroyed privity. We do not agree. Statements by Myers

went to the durability of the pipe. The fact that the buyer favored one distributor of a product over another distributor of the same product does not release the manufacturer from liability for a defective product. See 16 A.L.R.3d 683, 695–703.

 The sales acknowledgement sent by Republic to McAdams included a provision that liability for defective pipe was limited to replacement. Republic argues that the limitation is binding on plaintiffs. There is no evidence that plaintiffs knew of, or had their attention been called to, the limitation. Republic made the representations to the plaintiffs and shipped the pipe directly to them. It made no effort to notify them of any limiting conditions. In these circumstances the limitation did not affect the plaintiffs. Pennington Grocery Co. v. Wood & Co., 97 Okl. 220, 223 P. 368, 369.

Republic argues that the pipe satisfied the requirements of "API Grade 5L" and that the failure was caused by soil corrosion. We agree with the trial court that the API requirements were standards prevailing in the industry rather than specifications and the weight to be given thereto was for the jury. The evidence on soil corrosion was conflicting and for jury resolution. We will not disturb a verdict reached on conflicting evidence.

Republic argues that there was no evidentiary basis for the calculation of consequential damages. An injured party is not required to prove an exact amount of damage. When he proves the fact of damage with reasonable certainty "recovery will not be denied because the damages are difficult of ascertainment." Garcia v. Mountain States Telephone and Telegraph Company, 10 Cir., 315 F.2d 166, 167–168. Loss of profits is a proper item of damage in a waterflood case. Tidewater Oil Company v. Jackson, 10 Cir., 320 F.2d 157, 164–165, cert. denied 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 273. The trial of the issue of damages was a battle of experts.

The verdict was within the range of testimony and is supported by substantial evidence.

The final attack of Republic is against the instructions. In our opinion the instructions were adequate and proper. Instructions are to be considered as a whole, not piecemeal. Krieger v. Bausch, 10 Cir., 377 F.2d 398, 400. So considered, the instructions were fair to the defendant. See Marshall v. Ford Motor Company, 10 Cir., 446 F.2d 712, 714–715.

Affirmed.