**Deborah GREENHORN, Plaintiff,**

v.

**MARRIOTT INTERNATIONAL, INC., Marriott International Administrative Services, Inc., Fairfield FMC Corporation, and Larry Cox, Defendants.**

No. 02–2081–JWL.

United States District Court, D. Kansas.

April 28, 2003.

John B. Gage, II, The Gage Law Firm, P.C., Overland Park, KS, for Plaintiff.

Gregory F. Maher, James M. Yeretsky, Thomas J. Koehler, Yeretsky & Maher, L.L.C., Overland Park, KS, James N. Foster, Robert D. Younger, McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, MO, for Defendants.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Plaintiff Deborah Greenhorn filed suit against defendants alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as well as numerous state law claims, including assault, battery, sexual battery, invasion of privacy, intentional infliction of emotional distress and negligent infliction of emotional distress. This matter is presently before the court on defendants' motion to dismiss (doc. # 33) certain portions of plaintiff's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). As set forth more fully below, defendants' motion is granted in part and denied in part.

*Background* [1]

Plaintiff began working as a front desk attendant at the Fairfield Inn located at 67th Street and I–35 in Merriam, Kansas. At all times relevant to this suit, the General Manager of the Fairfield Inn was

---

1. The facts presented here are taken from plaintiff's amended complaint and, for purposes of defendants' motion to dismiss, the court accepts these facts as true. *See Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir.1998).

Emmylou Sarzoza. Beginning in February 2001, defendant Larry Cox was transferred to the Merriam Fairfield Inn and became the Assistant General Manager of that facility and, accordingly, one of plaintiff's supervisors. According to plaintiff, Mr. Cox began sexually harassing plaintiff soon after he began his employment at the Merriam facility. Plaintiff alleges that on one occasion early on in their working relationship, Mr. Cox described various sexual encounters to plaintiff in graphic detail and thereafter touched plaintiff's arms and neck and put his arm around her waist. Plaintiff, in the presence of Mr. Cox, asked Ms. Sarzoza to tell Mr. Cox not to touch plaintiff. According to plaintiff, Ms. Sarzoza replied, "Whatever," and then walked away. Mr. Cox also, on occasion, asked plaintiff if they could be "more than friends."

During the first few weeks of his employment at the Merriam facility, Mr. Cox was living at the Fairfield Inn while looking for a home in the Kansas City area. At the request of Ms. Sarzoza, plaintiff assisted Mr. Cox in looking for a home over the course of several days. On February 27, 2001, plaintiff met Mr. Cox in the lobby of the Fairfield Inn for the purpose of going out and looking at certain homes in which Mr. Cox was interested. When plaintiff arrived in the lobby, Mr. Cox asked her to accompany him up to his room to go over the information about the homes. Plaintiff declined and suggested that they go into the office. They did so and, after making calls to various realtors, Mr. Cox advised plaintiff that he needed to go to his room to retrieve an address for a particular house and asked her to accompany him. Plaintiff replied that it was hotel policy that employees were not permitted to go into a guest's room with that guest. Mr. Cox replied, "I'm not a guest. I'm your boss."

Plaintiff reluctantly accompanied Mr. Cox to his room. Once inside his room, Mr. Cox found the address of the home and then, before exiting the room, put his right arm around plaintiff's shoulder and kissed plaintiff on the lips. Plaintiff pulled away, advised Mr. Cox that she "didn't want this," and left the room. Mr. Cox followed plaintiff down the corridor, caught up with her and walked alongside her. He then advised plaintiff not to tell anyone what had happened and that if he lost his job he would make sure that she lost her job as well. When plaintiff and Mr. Cox stepped into the elevator to return to the lobby, Mr. Cox attempted to kiss plaintiff two more times, but plaintiff blocked his advances. Again, Mr. Cox warned plaintiff not to tell anyone what had happened, or she would "regret having done so."

Plaintiff promptly reported Mr. Cox's conduct to Ms. Sarzoza who either failed to pass plaintiff's complaint on to upper management or did pass on plaintiff's complaint to upper management, who then failed to act on the complaint. Suffice it to say, no investigation was conducted and plaintiff received no response concerning her complaint about Mr. Cox. Moreover, Ms. Sarzoza warned plaintiff that if she reported Mr. Cox's action to the police (as plaintiff had apparently suggested she would) then plaintiff's employment would be terminated. Ms. Sarzoza also directed plaintiff to continue working with and associating with Mr. Cox despite plaintiff's request that she not have to work "anywhere near him." According to plaintiff, Mr. Cox's sexual advances continued on a regular basis after February 27, 2001.

On April 8, 2001, Ms. Sarzoza again directed plaintiff to accompany Mr. Cox on a house-hunting excursion. During the trip, Mr. Cox made suggestive, sexual remarks to plaintiff and engaged in unwelcome physical touching of plaintiff. After

returning to the Fairfield Inn that evening, plaintiff worked the front desk, from where she was eventually summoned by Mr. Cox, who was in the employee break room. According to plaintiff, when she walked into the break room, Mr. Cox was standing just inside the door with his erect penis protruding from his pants. Plaintiff alleges that Mr. Cox told plaintiff that if she valued her job, she would perform oral sex on Mr. Cox. Terrified of losing her job, plaintiff complied. During the act, Mr. Cox repeatedly told plaintiff how secure her job would be as long as she continued to please him.

Plaintiff reported Mr. Cox's actions to Ms. Sarzoza. Again, no investigation was conducted and plaintiff received no response to her complaint. Ms. Sarzoza again advised plaintiff that her employment would be terminated if she reported Mr. Cox's actions to the police. Mr. Cox continued to sexually harass plaintiff. According to plaintiff, her complaints concerning Mr. Cox's behavior caused her to suffer economic harm in that Mr. Cox, after plaintiff's complaints, refused to permit plaintiff to cover shifts for absent employees, something she had done on a regular basis prior to Mr. Cox's arrival at Fairfield in an effort to supplement her wages. Mr. Cox also refused to permit plaintiff to work in the evenings two nights per week as she had previously done, again in an effort to supplement her wages. In mid-summer 2001, Mr. Cox left his employment at the Fairfield Inn. Plaintiff asserts that, after Mr. Cox left, she was forced to give up one of her regular working days, Saturday, after receiving pressure from her coworkers to do so. According to plaintiff, her coworkers were angry with plaintiff for reporting Mr. Cox's conduct and blamed plaintiff for Mr. Cox's leaving the Fairfield Inn.

After filing a charge of discrimination with the EEOC and receiving her notice of right-to-sue, plaintiff filed this lawsuit. Her amended complaint sets forth ten counts, including claims of sexual harassment and retaliation in violation of Title VII; two claims of battery based on Mr. Cox's conduct of February 27, 2001 and April 8, 2001; two claims of sexual battery based on Mr. Cox's conduct of February 27, 2001 and April 8, 2001; one claim of assault; and claims of invasion of privacy, intentional infliction of emotional distress and negligent infliction of emotional distress.

Additional allegations will be provided as they relate to defendants' motion.

*Gender Discrimination*

Defendants move to dismiss plaintiff's amended complaint to the extent plaintiff purports to assert claims of disparate treatment based on gender (as distinct from claims of sexual harassment) because plaintiff failed to exhaust her administrative remedies with respect to those claims. In response, plaintiff states that she never intended to assert gender discrimination claims and, instead, intended to assert only claims of sexual harassment. Defendants' motion, then, is granted to the extent plaintiff's amended complaint could be read to assert claims of disparate treatment based on gender.

*Exhaustion of Administrative Remedies*

[redacted] Defendants move to dismiss plaintiff's amended complaint to the extent plaintiff purports to assert claims based on plaintiff's allegations that she was precluded from filling in for absent employees; precluded from working two (2) nights per week; forced to give up working on Saturdays; and denied a promotion. According to defendants, any claims based on these adverse employment actions must be dismissed because plaintiff failed to exhaust her administrative remedies with respect to those claims. Specifically, defendants contend that plaintiff failed to identify

these adverse employment actions in her charge of discrimination and, thus, the court lacks jurisdiction over any claims based on those allegations.

■ Several Tenth Circuit cases have stated that the filing of a discrimination charge with either a state or federal administrative agency is a jurisdictional prerequisite to filing a Title VII discrimination suit in federal court. *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir.1997) (citing 42 U.S.C. § 2000e–5(e) and (f)(1)). Thus, a plaintiff "normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.1999) (citations omitted). The charge tells the agency what to investigate, provides it with the opportunity to conciliate the claim, and gives the charged party notice of the alleged violation. *Seymore*, 111 F.3d at 799. As explained below, while it is clear that plaintiff did not identify in her charge the specific adverse actions challenged by defendants, the court concludes that plaintiff's charge is minimally sufficient to satisfy the requirements for the contents of a charge of discrimination and the purposes of the notice requirement. Defendants' motion, then, is denied on this issue.[2]

. The specific allegations challenged by defendants are found in both Count I and Count II of plaintiff's amended complaint. In Count I, plaintiff asserts a claim for sexual harassment under Title VII and, in Count II, plaintiff asserts a claim for retaliation under Title VII. The court begins, then, with the adverse employment actions identified in Count I of plaintiff's amended complaint. In paragraph 86 of her amended complaint, found in Count I, plaintiff suggests that defendants' refusal to permit plaintiff to continue filling in for absent employees, defendants' refusal to permit plaintiff to continue working two nights per week, failing to promote plaintiff, and removing plaintiff from the Saturday work schedule constitute specific ways in which Mr. Cox harassed plaintiff.[3] While plaintiff's charge describes in some detail Mr. Cox's alleged harassment of plaintiff, the charge does not mention that Mr. Cox's harassment included refusing plaintiff to continue filling in for absent employees or any of the other actions challenged by defendants.

---

**2.** Plaintiff contends that exhaustion of remedies is not jurisdictional and may be waived and that defendants waived their right to challenge whether plaintiff had exhausted her remedies. Because the court concludes that plaintiff adequately exhausted her remedies, the court need not address whether exhaustion is jurisdictional or whether it may be waived and need not address whether defendants waived the issue.

**3.** In other paragraphs of her amended complaint, however, plaintiff suggests that these particular adverse actions, at least as they relate to her sexual harassment claim, are not a part of Mr. Cox's harassment of plaintiff but, rather, are "tangible employment actions" that she suffered as a result of spurning Mr. Cox's advances such that her employer would not be entitled to rely on the affirmative defense to liability set forth by the Supreme Court in *Faragher* and *Ellerth*. *See* Amended Complaint ¶¶ 76, 77, 79; *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1024 (10th Cir.2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). To the extent the particular adverse actions challenged by defendants and set forth in Count I of plaintiff's amended complaint are simply an effort by plaintiff to plead the requisite "tangible employment actions" for purposes of establishing employer liability in connection with plaintiff's sexual harassment claim, the court's conclusion remains the same-plaintiff was not required to include such allegations in her charge.

Nonetheless, in light of the Tenth Circuit's decision in *Gunnell v. Utah Valley State College*, 152 F.3d 1253 (10th Cir. 1998), the court concludes that plaintiff's charge is sufficient. In *Gunnell*, the plaintiff filed a charge of discrimination that did not assert a claim for sexual harassment. A few months after filing her charge, the plaintiff filed a supplement to her charge in which she stated that she "was subjected to a continuing pattern and practice of sexual harassment by Utah Valley Community College, now known as Utah Valley State College ('UVSC'), and my supervisor, Robert Clark, continuing up to at least April 16, 1993." *Id.* at 1258. The supplement contained no other allegations concerning the alleged harassment. The Tenth Circuit, however, concluded that the plaintiff sufficiently presented her claim of sexual harassment to the EEOC. *Id.* at 1260. While the Circuit acknowledged that the plaintiff's charge was "sparse," the Circuit reasoned that the charge was "minimally sufficient" in that the charge identified "the type of discrimination complained of, the alleged harasser, and an approximate time period." *Id.*

The allegations in plaintiff's charge here concerning sexual harassment are more extensive than the allegations at issue in *Gunnell*. In that regard, plaintiff states that she was subjected to unwelcome sexual harassment at the hands of Mr. Cox from approximately February 25, 2001 through the next several months and she identifies several specific examples of the alleged harassment. Thus, the court concludes that plaintiff's charge is sufficient and that plaintiff's specific examples of the manner in which Mr. Cox allegedly harassed her are properly before this court.

■ In Count II of her amended complaint, plaintiff asserts that defendants retaliated against her by, among other things, refusing to permit her to fill in for absent employees, removing her from the Saturday schedule, failing to promote her, and refusing to permit her to work two nights per week. None of the actions are identified by plaintiff in her charge. In fact, plaintiff dedicates only one sentence of the "particulars" portion of her charge to her retaliation claim. In that regard, plaintiff states that she complained to Ms. Sarzoza about Mr. Cox's conduct and that she "has since been retaliated against by employees of Respondent who resent her having made allegations against Mr. Cox which those employees contend led to Mr. Cox leaving Respondent's employ, and has informed Respondent of such retaliation, only to have Respondent take no action whatsoever to control such employees." Plaintiff does not identify any specific retaliatory acts in her charge. While this presents a much closer question than plaintiff's sexual harassment claim, the court nonetheless believes that the Tenth Circuit, in light of its *Gunnell* decision, would conclude that plaintiff adequately exhausted her administrative remedies. Plaintiff marked the "retaliation" box in the "cause of discrimination" portion of her charge, she stated that she made a complaint of discrimination and that she was then subjected to retaliatory conduct at the hands of defendants' employees. This information is sufficient to put defendants (and the EEOC) on notice of plaintiff's claim. *See* 29 C.F.R. § 1601.12(b) ("[A] charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties and to describe generally the action or practices complained of."), *cited with approval in Gunnell*, 152 F.3d at 1260; *compare Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir.2002) (plaintiff failed to exhaust retaliation claim where charge made no mention of protected activity and plaintiff failed to check the box

on the charge form indicating retaliation). Defendants' motion, then, is denied.

### Employer Liability for Intentional Torts of Employee

█ Defendants next move to dismiss plaintiff's claims of assault, battery, invasion of privacy and intentional infliction of emotional distress (Counts III, IV, V, VIII and IX) as against the corporate defendants on the grounds that the corporate defendants cannot be held liable for intentional torts allegedly committed by defendant Larry Cox. While defendants concede that an employer may be held liable for the intentional torts of its employees if the employee is acting within the scope of his or her employment, defendants maintain that the alleged conduct of Mr. Cox (*i.e.,* kissing plaintiff and forcing her to perform oral sex) is clearly outside the scope of his employment. In response, plaintiff does not contend that Mr. Cox was acting within the scope of his employment. Indeed, this court has rejected that theory in a case with similar facts. *See Parks v. Hayward's Pit, Inc.,* No. 93–2387–JWL, 1993 WL 545231 (D.Kan. Dec.21, 1993). Rather, plaintiff contends that the corporate defendants are liable for Mr. Cox's conduct because they ratified that conduct by virtue of their ongoing tolerance of Mr. Cox's continuing course of tortious conduct.

█ As an initial matter, defendants urge that plaintiff's ratification theory of liability has already been rejected by this court in the *Hayward's* case. In that case, after the court rejected plaintiff's scope-of-employment theory of liability, *see id.,* plaintiff filed an amended complaint seeking to hold Hayward's liable based on theories of negligence, ratification and that the supervisor was "aided in his wrongdoing by the authority of his position." *See Parks v. Hayward's Pit, Inc.,* No. 93–2387–JWL, 1994 WL 481751, at *5 (D.Kan. Aug.22, 1994). Significantly, plaintiff in that case directed the court to no authority suggesting that Kansas would recognize those theories of liability and, in the absence of any indication from the Kansas courts concerning the viability of those theories, the court rejected plaintiff's proposed theories of liability. *See id.* As plaintiff points out in her papers, however, the legal landscape in Kansas has changed since this court's *Hayward's* decision and at least one case, *Quality Painting, Inc. v. Truck Insurance Exchange,* 26 Kan. App.2d 473, 988 P.2d 749 (1999),[4] indicates that Kansas, at least in certain circumstances, would recognize ratification as a viable theory for holding a principal liable for the intentional torts of his or her agent.

*Quality Painting* arose in the context of a insurance company's duty to defend Quality in a sexual harassment suit filed against Quality based on the conduct of Quality's owner, Robert Holloway. *Id.* at 473, 988 P.2d 749. As the policy at issue specifically excluded from coverage intentional acts of the insured, the insurance company argued that it had no duty to defend because the plaintiff's claims were based upon intentional acts committed by Holloway. *Id.* at 475, 988 P.2d 749. Quality, on the other hand, maintained that its insurance company did have a duty to

---

**4.** When presented with a question of Kansas law that the Kansas Supreme Court has not resolved, the court's task is to predict how that court would rule on the issue. *See Save Palisade FruitLands v. Todd,* 279 F.3d 1204, 1207 n. 1 (10th Cir.2002) (citing *Daitom, Inc. v. Pennwalt Corp.,* 741 F.2d 1569, 1574 (10th Cir.1984)). In carrying out this task, the court must "follow any intermediate state court decision unless other authority convinces [it] that the state supreme court would decide otherwise." *Id.* (citations omitted). As further explained in this opinion, defendants have provided the court with no persuasive reason to conclude that the Kansas Supreme Court would reach a decision contrary to *Quality Painting,* which the court therefore follows as Kansas law.

defend because the plaintiff in the underlying suit had asserted a claim of negligence against Quality on the grounds that Quality negligently failed to provide its employees a safe work place free from sexual harassment. *Id.* at 474, 988 P.2d 749.

The Kansas Court of Appeals ultimately affirmed the lower court and concluded that the insurance company did not have a duty to defend Quality because Quality could not be regarded as a "negligent, nonculpable insured." *Id.* at 478, 988 P.2d 749. Rather, the court concluded that Quality would be liable for the intentional acts of Mr. Holloway because Quality had "ratified and condoned" the acts taken by Mr. Holloway. *Id.* at 478–79, 988 P.2d 749. In so concluding, the Kansas Court of Appeals stated that the district court had "correctly relied on *Smith v. Printup*, 254 Kan. 315, 349, 866 P.2d 985 (1993), in finding that a corporation's ongoing tolerance of a continuing course of conduct, like sexual harassment, logically amounts to ratification of that conduct." *Id.* at 478, 866 P.2d 985. While *Smith v. Printup* seems only indirectly on point in that the *Smith* case addressed ratification in the limited context of assessing whether the defendant should be liable for punitive damages under the language of K.S.A. § 60–3701(d)(1),[5] the Kansas Court of Appeals' reliance on *Smith* indicates the court's view that the ratification principles set forth in *Smith* have application outside the contours of K.S.A. § 60–3701(d)(1).

As the Kansas Court of Appeals noted in *Quality Painting*, the *Smith* court cited with approval cases from other jurisdictions, albeit ones dealing with punitive damages, stating:

> "[I]f corporate management obviously tolerates the kind of conduct that causes the injury, it amounts to ratification and/or authorization. Most of these cases, however, involve a continuing course of tortious conduct. *Khalid Bin Talal Etc. v. E.F. Hutton & Co.*, 720 F.Supp. 671 (N.D.Ill.1989) (recurring misconduct in commodities trading); *Hart v. National Mortgage & Land Co.*, 189 Cal.App.3d 1420, 235 Cal.Rptr. 68 (1987) (sexual harassment); *Wirig v. Kinney Shoe Corp.*, 448 N.W.2d 526 (Minn.App.1989) (sexual harassment). In those cases, ongoing tolerance logically amounts to ratification."

*Id.* at 478, 988 P.2d 749 (quoting *Smith*, 254 Kan. at 349, 866 P.2d 985). Looking to the *Smith* decision, the Kansas Court of Appeals concluded its analysis of Quality's liability for Mr. Holloway's conduct that Quality "clearly tolerated or ratified Holloway's intentional sexual harassment." *Id.*

*Quality Painting*, then, indicates to this court that Kansas courts would permit a plaintiff to hold his or her employer liable for the intentional acts of an employee pursuant to a ratification theory if that plaintiff could demonstrate the employer's "ongoing tolerance of a continuing course of tortious conduct."[6] In her amended

---

5. K.S.A. § 60–3701(d)(1) provides that a principal or employer cannot be held liable for punitive damages for the acts of an agent or employee "unless the questioned conduct was authorized or ratified by a person expressly empowered to do so on behalf of the principal or employer."

6. Defendants urge that *Quality Painting* does not speak to the issue of vicarious liability, but simply concluded that Quality would be liable for Mr. Holloway's acts because Mr. Holloway was essentially the alter ego of

Quality such that Quality and Mr. Holloway were "one and the same." Defendants, then, contend that *Quality Painting's* discussion of ratification must be limited to those situations where the agent is the alter ego of the corporation. The court believes that defendants' interpretation of *Quality Painting* is too simplistic. While the *Quality Painting* court found it significant that Mr. Holloway was the owner and sole proprietor of Quality and to some extent merged the concepts of direct and vicarious liability, the court would not have had to discuss the ratification issue at all

complaint, plaintiff alleges that she complained about Mr. Cox's conduct on multiple occasions and that defendants failed to take any corrective action against Mr. Cox, thereby tolerating and ratifying Mr. Cox's course of tortious conduct. *See* Amended Complaint ¶¶ 64, 73. Because defendants have not challenged whether these specific allegations, if proved, are sufficient to constitute ratification (instead, defendants have challenged only whether ratification is a viable theory of liability under Kansas law), the court need not decide that issue today. The court concludes only that ratification is available to plaintiff as a theory of holding her employer liable for Mr. Cox's intentional torts and, thus, defendants' 12(b)(6) motion is denied.

*Statute of Limitations*

Defendants also move to dismiss Counts III, IV and V (plaintiff's assault and battery claims) against defendants Marriott International Administrative Services, Inc. (hereinafter "MIAS") and Fairfield FMC Corporation (hereinafter "Fairfield") on the grounds that the one-year statute of limitations applicable to these counts, *see* K.S.A. § 60–514, had passed before plaintiff asserted these claims against these particular defendants. Indeed, plaintiff did not amend her complaint to assert claims against defendants MIAS and Fairfield until November 13, 2002–more than one year after the alleged assaults and batteries that took place between February 2001 and May 2001. According to plaintiff, Federal Rule of Civil Procedure 15(c) saves these claims from dismissal because her amendment adding defendants MIAS and Fairfield relates back to the date she filed her initial complaint.

■ Rule 15(c)(3) provides that an amendment changing "the party or the naming of the party against whom a claim is asserted" relates back to the filing of the

original pleading if the claim "arose out of the conduct, transaction, or occurrence set forth ... in the original pleading," Rule 15(c)(2), and, within the time for service of the complaint, *see* Fed.R.Civ.P. 4(m),

> the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c)(3). If, under the terms of Rule 15(c), the amendment should relate back to the filing of the original complaint, then plaintiff's claims will not be barred by the statute of limitations. *See Maycher v. Muskogee Medical Center Auxiliary,* 129 F.3d 131, 1997 WL 698007, at *1 (10th Cir. Nov.6, 1997).

■ However, before determining whether plaintiff's amendment meets the requirements of Rule 15(c), the court must resolve a threshold issue raised by defendants-whether Rule 15(c) is even available as a vehicle to plaintiff in this instance. According to defendants, the plain text of Rule 15(c)(3) permits a plaintiff to name a new defendant in place of an old one, but does not permit a plaintiff to name a new defendant in addition to the existing ones. Clearly, plaintiff here is attempting to add new defendants while maintaining her claims against the initial defendant Marriott International, Inc. Moreover, the plain language of Rule 15(c)(3) does seem to contemplate only changes to an existing party name or substituting one party for another. *See* Rule 15(c)(3) (an amendment of a pleading relates back to date of the original pleading when the amendment "changes the party or the naming of the party against whom a claim is asserted").

if it believed that the alter ego status of Mr.

Holloway was dispositive of the liability issue.

The Tenth Circuit, however, has permitted, under Rule 15(c), the amendment of a complaint adding entirely new parties in addition to the existing parties. *See Brauer v. Republic Steel Corp.,* 460 F.2d 801, 804 (10th Cir.1972). While the *Brauer* case is not exactly on point in that the court permitted the addition of new plaintiffs (as opposed to new defendants), it nonetheless indicates that the Circuit would espouse a liberal reading of the word "changes" found in Rule 15(c). Wright and Miller are in accord with this principle. As explained by the authors:

> The word "changing" has been liberally construed by the courts, so that amendments simply adding or dropping parties, as well as amendments that actually substitute defendants, fall within the ambit of the rule.... If both the transaction test and the notice requirement of Rule 15(c) are satisfied, there is no justification for a restrictive interpretation of the word "changing" that would require a plaintiff to choose among defendants. Too narrow a reading of the rule might result in the release of a party who ultimately might have proven to be liable and would not have been prejudiced in his defense on the merits by the addition of another defendant.

6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1498 at 127–29 (2d ed.1990).

According to the allegations in plaintiff's amended complaint, she initially believed that defendant Marriott International, Inc. was her sole employer. Since the filing of her complaint, she has obtained information that has caused her to believe that the three named defendants all served as her employer in that they operated as an integrated enterprise or as joint employers. The court concludes that it would be unfair to deny plaintiff the benefits of Rule 15(c) merely because her counsel, presumably for the protection of plaintiff's interests, has not undertaken the risk of dropping defendant Marriott International, Inc. and substituting defendants MIAS and Fairfield. Thus, the court concludes that the facts of this case fall within the scope of Rule 15(c).

The court, then, turns to address whether plaintiff's amendment satisfies the requirements of Rule 15(c) such that her amendment relates back to the date of her original pleading. For purposes of their motion, defendants concede that plaintiff's amendment arose out of the same conduct or transaction as asserted in her original complaint. Defendants further concede that they received "such notice of the institution of the action that [they] will not be prejudiced in maintaining a defense on the merits." *See* Fed.R.Civ.P. 15(c)(3). Nonetheless, defendants urge that the requirements of Rule 15(c) have not been satisfied because defendants MIAS and Fairfield did not receive notice of the action within the period provided by Rule 4(m) for service of the summons and complaint and because plaintiff cannot demonstrate that she made a "mistake in identity" of the proper party. *See id.*

Plaintiff contends that the three defendants share an "identity of interest" such that notice to defendant Marriott International, Inc. within the time period prescribed by Rule 4(m) is sufficient to constitute notice to defendants MIAS and Fairfield within the prescribed time. The Tenth Circuit has recognized the viability of this principle. *See, e.g., Brauer,* 460 F.2d at 804 (where plaintiff filed amended complaint adding additional party plaintiffs, the amendment related back to the date of the original complaint in part because a close identity of interest existed between the original plaintiff and the added plaintiffs); *Travelers Indemnity Co. v. United States ex rel. Construction Specialties Co.,* 382 F.2d 103, 106 (10th Cir. 1967) (The purpose of the federal rules is

not "furthered by denying the addition of a party who has a close identity of interest with the old party when the added party will not be prejudiced."). Moreover, according to Wright and Miller, "[i]dentity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *See* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *supra,* § 1499 at 146. In her amended complaint, plaintiff alleges that the three defendants share substantially the same officers and directors and that all three entities share the same address as their principal place of business. In these circumstances, the court concludes that notice to defendant Marriott International, Inc. constituted notice to defendants MIAS and Fairfield. *See id.* § 1499 at 147–49 (an identity of interest has been found between related corporations whose officers, directors or shareholders are substantially identical and who may have similar names or conduct their business from the same offices).

Finally, the court addresses-and rejects-defendants' argument that plaintiff cannot demonstrate that she made a mistake in the identity of the proper party. This is not a case where the plaintiff was aware of the identity of a party but made a deliberate choice not to name that party as a defendant in the original complaint nor is this case where the plaintiff initiates litigation against an unknown party and did not identify that party until after the limitations period expired. *See Maycher v. Muskogee Medical Center Auxiliary,* 129 F.3d 131, 1997 WL 698007, at *2 (10th Cir. Nov.6, 1997). Rather, plaintiff intended from the outset to sue her employer; she simply made a mistake by (apparently) assuming that Marriott International, Inc. was her only employer. *See id.* If defendants MIAS and Fairfield did, in fact, employ plaintiff, then they should have known, but for plaintiff's mistake, that the action would have been initiated against them. *See Aerotel, Ltd. v. Sprint Corp.,* 100 F.Supp.2d 189 (S.D.N.Y.2000) (Scheindlin, J.) (plaintiff's amended complaint naming new defendants Sprint Communications and Sprint Spectrum in addition to existing defendant Sprint Corporation related back to filing of original complaint naming only Sprint Corporation; given the close relationship among the entities, it was reasonable to assume that the new defendants knew the action would have been brought against them but for plaintiff's mistake in assuming that Sprint Corporation sold prepaid telephone cards, where plaintiff intended to sue seller of cards). Thus, relation back is appropriate and the court rejects defendants' statute of limitations argument. *See* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *supra,* § 1498 at 137–39 (if party "should have known" he was the one intended to be sued, relation back is generally appropriate; relation back will be refused only if the court finds that there is no reason why the party to be added should have understood that he was not named due to a mistake); *accord Archuleta v. Duffy's Inc.,* 471 F.2d 33, 35 (10th Cir.1973).

### *Sexual Battery*

In Counts VI and VII of her amended complaint, plaintiff sets forth claims of sexual battery based on the alleged events of February 27, 2001 and April 8, 2001, respectively. Defendants move to dismiss these claims on the grounds that Kansas does not recognize a civil cause of action for sexual battery and, in any event, the claims are duplicative of Counts III and V, in which plaintiff asserts claims for battery for the same conduct as alleged in Counts VI and VII. In response, plaintiff contends that Kansas law does permit a civil right and remedy for sexual

battery. She, however, does not respond to defendants' argument that plaintiff's claims for sexual battery are duplicative of her claims for battery. A review of plaintiff's amended complaint reveals that the claims are duplicative. Indeed, plaintiff seeks the same damages for her sexual battery claims as she does for her battery claims and, as stated above, the claims are based on the same alleged conduct. In the absence of any suggestion from plaintiff that she would be entitled to recover additional damages under one theory that would not be available under the other, the court dismisses plaintiff's claims for sexual battery as duplicative. Thus, the court need not consider whether Kansas law recognizes a civil cause of action for sexual battery.

*Invasion of Privacy*

 In Count VIII of her amended complaint, plaintiff asserts that defendants' conduct "intentionally intruded, physically and emotionally, upon [her] solitude or seclusion" and that "such intrusion upon [her] solitude or seclusion amounted to an invasion of her right to privacy." Defendants move to dismiss this claim on the grounds that plaintiff, as a matter of law, enjoyed no reasonable expectation of privacy while at work. The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief," *Poole v. County of Otero,* 271 F.3d 955, 957 (10th Cir.2001) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or when an issue of law is dispositive. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Smith v. Plati,* 258

F.3d 1167, 1174 (10th Cir.2001). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

In support of their motion, defendants direct the court to only one case, *Maus v. Belger Cartage Service, Inc.,* No. 96–1257–JTM, 1996 WL 748056 (D.Kan. Dec.27, 1996) (Marten, J.). *Maus* clearly does not stand for the sweeping proposition that a plaintiff does not have a reasonable expectation of privacy while he or she is at his or her place of employment. In *Maus,* Judge Marten held that the plaintiff failed to plead sufficient facts to demonstrate a claim for invasion of privacy under Kansas law where the plaintiff alleged that the defendant's agents (plaintiff's coworkers and supervisors) made sexual jokes in her presence, made obscene gestures and motions, made lewd sexual inferences in plaintiff's presence and, on one occasion, committed a sexual battery upon plaintiff. *Id.* at *3. No details concerning the nature of the sexual battery are provided in the opinion. Here, plaintiff's amended complaint reveals alleged conduct of a far more serious and invasive nature than the conduct described in *Maus.* Moreover, the court in *Maus* contrasted the plaintiff's case from one in which the employer

> made "intrusive or coercive sexual demands" upon her such that they constituted an "examination" into her "private concerns," that is, improper inquiries into her personal sexual proclivities and personality.

*Id.* at *2–3 (quoting *Haehn v. City of Hoisington,* 702 F.Supp. 1526 (D.Kan. 1988) (quoting *Phillips v. Smalley Mainte-*

*nance,* 711 F.2d 1524, 1536 (11th Cir. 1983))). Plaintiff's amended complaint contains allegations of coercive sexual demands of a highly offensive and intrusive nature. In short, bearing in mind the standards governing a motion to dismiss pursuant to Rule 12(b)(6), the court cannot say as a matter of law that plaintiff can prove no set of facts which would entitle her to relief for invasion of privacy. Defendants' motion to dismiss this claim is denied.

*Intentional Infliction of Emotional Distress*

▆▆▆ In Count IX of her amended complaint, plaintiff generally asserts that the conduct of Mr. Cox constitutes the tort of intentional infliction of emotional distress. Defendants move to dismiss this claim on the grounds that "[n]othing alleged in Plaintiff's Amended Complaint gives rise to outrageous conduct on the part of Defendants or extreme emotional distress on the part of Plaintiff." Defendants also assert that Mr. Cox's alleged acts of forcibly kissing plaintiff and requiring her to perform oral sex on him are "neither extreme nor outrageous." The court disagrees with defendants and readily concludes that if an average citizen read the allegations in plaintiff's amended complaint concerning Mr. Cox's exposure of himself to plaintiff on April 8, 2001, that citizen would characterize the conduct as outrageous. *See Taiwo v. Vu,* 249 Kan. 585, 822 P.2d 1024 (1991) (liability for intentional infliction of emotional distress may be found to exist generally in a case when the recitation of facts to an average citizen would arouse resentment against the actor, and lead that citizen to spontaneously ex-

claim, "Outrageous!"). Defendants' motion, then, is denied to the extent plaintiff's claim is based on Mr. Cox's exposing himself to plaintiff on April 8, 2001. *See Miller v. Bircham, Inc.,* 874 F.Supp. 337, 341 (D.Kan.1995) (denying summary judgment on outrage claim where plaintiff was subjected to "multiple instances in which a fellow employee exposed his penis while making lewd comments to her"); *Parks v. Hayward's Pit, Inc.,* No. 93–2387–JWL, 1993 WL 545231, at *1 (D.Kan. Dec.21, 1993) (reiterating ruling from bench denying supervisor's motion to dismiss outrage claim where supervisor had exposed himself to plaintiff).[7] The motion is granted to the extent plaintiff purports to base her claim on any other conduct engaged in by Mr. Cox. *See Dunegan v. City of Council Grove, Kansas Water Dep't,* 77 F.Supp.2d 1192, 1208 (D.Kan.1999) (granting motion for summary judgment on outrage claim where supervisor's conduct towards female employee included grabbing her breast and kissing her neck); *Glover v. Heart of America Management Co.,* 38 F.Supp.2d 881, 888 (D.Kan.1999) (existence of hostile work environment under Title VII does not necessarily require a finding of outrageous conduct).

*Negligent Infliction of Emotional Distress*

▆▆▆ Defendants construed Count X of plaintiff's amended complaint as a negligence claim based on defendants' alleged failure to prevent or correct sexual harassment and moved to dismiss that claim on the grounds that it is not recognized by Kansas law. In her response, plaintiff clarified that she intended to allege in Count X a claim for negligent infliction of

---

7. In their reply, defendants contend that plaintiff "impliedly concedes" that her intentional infliction of emotional distress claim should be dismissed because plaintiff failed to address that claim in her papers. However, because plaintiff's claim so clearly withstands defendants' motion, the court is unwilling to assume that plaintiff has abandoned her claim and, instead, presumes that plaintiff's failure to address her claim was the result of mere oversight.

emotional distress. In their reply brief, then, defendants move to dismiss plaintiff's claim for negligent infliction of emotional distress on the grounds that plaintiff has not alleged the requisite physical injury that must accompany such a claim. The court, of course, will not consider arguments raised for the first time in a reply brief. *See Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir.2003) (argument raised for the first time in reply brief is waived) (citing *Coleman v. B–G Maintenance Management*, 108 F.3d 1199, 1205 (10th Cir.1997) (issues not raised in the opening brief are deemed abandoned or waived)). As a result, the motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss (doc. # 33) is granted in part and denied in part.

**IT IS SO ORDERED.**